78 N.J. Super. 183 (1963)
188 A.2d 188
LOUIS GOLDBERG AND PHYLLIS GOLDBERG RUBIN, PLAINTIFFS-RESPONDENTS,
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, ALSO KNOWN AS COMMERCIAL UNION FIRE INSURANCE COMPANY OF NEW YORK, A FOREIGN CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1962.
Decided January 31, 1963.
*185 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Marvin A. Sachs argued the cause for appellant (Mr. Harold D. Feuerstein, attorney).
Mr. Leonard Rubin argued the cause for respondents.
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from summary judgments in favor of plaintiffs entered in the Law Division. No counter-motion for summary judgment was made by defendant.
On November 2, 1957 defendant issued to Louis Goldberg, residing at 962 Arlington Avenue, Plainfield, N.J., an insurance policy designated "Jewelry-Fur Floater Policy  World Wide." The pertinent parts of the insuring clause of the policy provided that the company insured Goldberg for a specified amount "* * * on jewelry * * * being property of the assured and members of his * * * family of the same domicile, against all risks of loss or damage * * * whilst in all situations." There followed a description and valuation of the several items of jewelry which in total conformed with the specified amount of insurance extended. The description included the following:

 "4. One 14K yellow gold scarab bracelet containing seven
 scarabs .......................................... $ 40.00
 5. One 14K yellow gold charm bracelet containing
 eleven charms .................................... 200.00
 6. One 14K yellow gold ring containing six rubies and
 five diamonds .................................... 150.00."

*186 These articles were the property of Phyllis Goldberg, daughter of the assured, who at the time the policy was issued was unmarried, and resided with her father.
On March 26, 1960 Phyllis married, and thereafter, according to her own affidavit, was domiciled with her husband at 1022 Rose Street, Plainfield, N.J. On November 10, 1959 her husband, Leonard Rubin, purchased a pear-shaped diamond engagement ring for $2,300. Insurance under the Goldberg policy was applied for and, at the request of defendant, an appraisal of the ring was made. The appraisal was forwarded to the defendant and, upon the basis of it, the ring was insured under Goldberg's policy, by rider. Some time in March 1960, Rubin purchased from a client for $250 a gold hand-carved bracelet which he presented to his wife. Again insurance was requested and the bracelet was appraised at the request of defendant. Subsequently, by rider, it was included in Goldberg's policy as an insured item. The two riders are not before us; they have been lost. However, counsel agree that they did not vary the terms of the main policy, except that the amount of coverage was increased so as to include the value of the two new items.
On May 26, 1960 the Rubins' domicile was burglarized. Among the articles stolen therefrom were the two pieces of jewelry covered by the riders, items No. 4 and No. 6 described in the original policy, as above set forth, and a $5.00 gold piece in a gold frame valued at $12, together with a "mad money" charm worth $35, both of which were on the charm bracelet described in item No. 5. Mrs. Rubin immediately reported the loss to the Richards Agency, operated by Julius and Ida Richards, which had issued the original policy and the riders, as agent of defendant.
Defendant declined to pay the loss, and plaintiffs instituted the present action. Plaintiffs' original complaint alleges ownership of the jewelry by Mrs. Rubin, the theft, and compliance with all pertinent provisions of the policy. Defendant denied liability upon the ground that "plaintiff is not an assured under the policy and is not covered thereby." Obviously, *187 the "plaintiff" referred to is Phyllis Rubin, the owner of the jewelry.
Subsequently, plaintiffs filed an amended complaint in which they joined Julius Richards alleging that they had instructed him to issue the necessary policy covering the risks the plaintiffs specified, and that he had "willfully, wantonly and negligently failed to follow plaintiffs' instructions." Later, a second amended complaint was filed in which Ida Richards was joined as a defendant upon the same theory of liability. It does not appear that the counts against Julius and Ida Richards were litigated further. In any event, the damages therein sought were subsumed by the judgment against the defendant insurance company.
After issue was joined plaintiffs served interrogatories on the defendant through which they developed that: the corporate defendant and Julius Richards first became aware on May 26, 1960, that Phyllis Rubin was the owner of the jewelry in question, was married, and was not a member of the domicile of Louis Goldberg at the time of the theft; Ida Richards became aware of the marriage of Phyllis Rubin about April 28, 1960, and learned of her new address on May 26, 1960; on April 28, 1960 the Richards Agency sent bills to "either Louis Goldberg and/or Phyllis Goldberg" for the additional premium of $1.60 due on the bracelet which Leonard Rubin had purchased in March 1960; the Richards Agency received this premium on June 7, 1960, and defendant had not returned or offered to return the premium. In due course, plaintiffs, relying on affidavits stating the facts hereinabove set forth, and the answers to the interrogatories adverted to, moved for summary judgment upon the issue of the corporate defendant's liability under the policy.
In granting plaintiffs' motion on the limited issue of liability, the trial court appears to have reasoned that since the policy did not require notice of a change in domicile by a person originally covered, the reference in the insuring clause  property of assured and members of his or her family of the same domicile  was merely descriptive of the property at *188 the time the policy was issued. The court, therefore, concluded that the admitted change of domicile by Phyllis Rubin did not take her "out of coverage."
Later, following a pretrial of the case, plaintiffs moved for a final summary judgment claiming that the policy was a "valued policy" rather than an "open policy," hence, the value of the stolen articles as agreed upon by the parties when the policy was originally issued and when the two riders were subsequently attached thereto, was controlling of the loss, and relieved plaintiffs of the need for presenting evidence of value. The court so held (except for one item having a stipulated value of $52) and entered judgment for the plaintiffs for $2,792 with interest at 4% from May 25, 1960. This appeal followed.
In view of our disposition of this case we do not reach the question of whether the policy in question was a "valued policy," or an "open policy," in which latter event uncontradicted proof of value would have been requisite to a summary judgment in plaintiffs' favor. Nor do we concern ourselves with the propriety of the allowance of interest from May 25, 1960.
The issues which we find determinative are (1) whether Phyllis Rubin retained the coverage granted to her by the policy after she moved from Louis Goldberg's domicile and established a new domicile with her husband, and (2) whether the payment of the additional premium on June 7, 1960, the events leading to it, and the retention of it by the corporate defendant, or its authorized agent the Richards Agency, worked an estoppel against the defendant to deny the existence of coverage in favor of Phyllis Rubin.
Initially, we consider the span of the coverage embraced by the policy. In the recent case of Crossfield v. Phoenix Insurance Company, 77 N.J. Super. 476 (App. Div. 1962), this court had occasion to interpret an insurance clause in a burglary policy which insured against loss "all property owned, worn or used by the named insured and members of the named insured's family of the same household, while in *189 all situations of the world." (Emphasis added) There, the named insured's son, unmarried and residing at home when the policy was issued, subsequently married and established a domicile with his wife in New York City, from which personal property owned by him and his wife thereafter was stolen. This court affirmed the holding of the trial court that in such circumstances plaintiffs were not "`members of the named insured's family of the same household' at the time of the burglary," and consequently had no coverage under the policy. (Emphasis added) In the context under consideration, we perceive no significant difference between the words "household" and "domicile."
In Crossfield, relying upon Neidhoefer v. Automobile Ins. Co. of Hartford, Conn., 182 F.2d 269, 273 (7 Cir. 1950), we said "the important and perhaps controlling feature in situations of the instant character is the intent possessed by the departing member of a family" with respect to his domicile thereafter. This observation is clearly applicable to the case at bar. Since Phyllis Rubin, by her own admission, established a domicile independent of that of the named insured, her intent to permanently forsake his domicile was thereby unequivocally and irrefutably expressed.
Plaintiffs' attorney recognizes Phyllis' change of domicile as a fact which is beyond debate. However, adopting the line of reasoning of the trial court, he argues that under basic principles requiring liberal construction in favor of coverage, see Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8 (1961), the "proper interpretation [of the insuring clause] should be that domicile should control as of the time of the issuance of the policy, and not as of the time of the loss." His argument runs that the intention of one taking insurance on personal property is to insure the property against loss, and when, as here, the insured property is described in detail, the location of it at the time of loss becomes unimportant notwithstanding the domiciliary provision. He cites no authority for this contention other than Liverpool & London & Globe Ins. Co. v. Georgia Auto & S. Co., 29 Ga. *190 App. 334, 115 S.E. 138 (Ct. App. 1922). We have examined that case and find it legally and factually inapposite to the problem here presented. However, to such extent as rationalization might possibly give it bearing, the case tends to refute the proffered argument rather than to support it.
The rule is firmly established that in construing the intentions of parties to a contract the general purpose of the agreement, as expressed by the words employed, when read and construed as a whole, is the objective sought. Bullowa v. Thermoid Co., 114 N.J.L. 205, 209 (E. & A. 1935). Effect, if possible, will be given to all parts of the instrument and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. Id., at p. 210. See also Cooper v. Kensil, 31 N.J. Super. 87, 91 (Ch. Div. 1954), affirmed 33 N.J. Super. 410 (App. Div. 1954).
The core of an insurance policy is the insuring clause. Where, as here, persons entitled to coverage are designated as members of the named assured's family, domiciled with him, we think that a plain intention is expressed that such persons be so domiciled at the time of the loss. Otherwise the domiciliary requirement becomes not merely unimportant, as plaintiffs contend  but meaningless. In this connection, we point out that if domicile at the time of issuance of the policy is the determinant, then a member of the family domiciled with Louis Goldberg at the time of a burglary of the domicile would not be entitled to recovery for a loss, if he had not been domiciled with Goldberg at the time the policy was written. Such a bizarre result would, in our judgment, be untenable. Thus, we conclude that the real and underlying objective of the parties was to set forth the class of persons entitled to coverage at the time of a loss, namely, the named insured and members of his family domiciled with him at that time.
The necessity that the domicile of a claimant be that of the named insured at the time of the loss, regardless of the location of the stolen property at such time, seems not to *191 have been articulated by our courts in a case in which that question was directly presented. But it is significant that in the portion of Crossfield, supra, above quoted, such domiciliary requirement appears to have been assumed to be a prerequisite to recovery. So, too, in Neidhoefer, supra, the court stated that the "burden was upon the plaintiff to prove that Annette Neidhoefer was a member `of the assured's family of the same household' at the time of the alleged loss." (Emphasis added) 182 F.2d, at p. 273. Indeed, in both Crossfield and Neidhoefer the opposite results would have been reached if the courts which decided those cases had adopted plaintiffs' contention that the claimants' place of domicile at the time of the loss was of no consequence, provided that they were members of the named assured's family and had been domiciled with him at the inception of the insurance agreement. Plainly, in that event, one of the plaintiffs in Crossfield, namely Henry Crossfield, would have been entitled to recover since he resided in the domicile of his father, the named assured, either when the policy was issued or while it was in effect and before the loss. And in Neidhoefer, the plaintiff who was separated from, and living apart from, her husband at the time of the burglary loss, had previously, and during the policy term, been domiciled with him. We are, therefore, satisfied that Phyllis Rubin ceased to have coverage under the policy of Louis Goldberg when she became domiciled with her husband in their apartment at 1120 Rose Street, Plainfield, N.J.
Again, we cannot agree with plaintiff that the retention by the company or its agent, of plaintiff's check received on June 7, 1960, and purportedly given for coverage of Phyllis Rubin's gold bracelet under Goldberg's policy, constituted an estoppel to deny that coverage existed at the time of the loss. On this aspect of the case, the predominant view is that a loss which is not within the coverage of a policy cannot be brought within such coverage by invoking the principles of waiver or estoppel. 17 Appleman, Insurance Law and Practice, (1945) § 9404, p. 16.
*192 In Home Ins. Co. of New York v. Campbell Motor Co., 227 Ala. 499, 150 So. 486, 489 (Sup. Ct. 1933), the court explained the rule thus:
"We readily agree with counsel for appellant that if the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract. No one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened, by the application of the principle of waiver or estoppel, to cover loss by cyclone. The effect, in such a case, would be to create a new contract, without a new consideration."
See also Wheeler v. United States Casualty Co., 71 N.J.L. 396 (Sup. Ct. 1904), affirmed 73 N.J.L. 677 (E. & A. 1906).
However, our own Supreme Court in the recent case of Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114 (1962), refined this rule by distinguishing between waiver and estoppel and suggesting generally the areas in which each might be operative. There the court said:
"Analytically, a distinction should be drawn between (1) cases in which the loss is not within the policy coverage and (2) cases in which the policy does cover but fraud in the inception or a breach of the policy is claimed.
Where the policy does not cover the loss, it seems inaccurate to speak of a `waiver' since there is nothing to waive. Rather, the relevant thought is `estoppel,' and undoubtedly prejudice is an essential ingredient." 37 N.J., at p. 129 (Emphasis added.)
Vide 5 Rutgers L. Rev. 278 (1949-1950). And see Annotation 29 A.L.R.2d 654 (1951).
The applicability of this terse and definitive statement to the case sub judice is patent. Since, as we have held, Phyllis Rubin had no coverage under her father's policy when her personalty was stolen on May 26, 1960, contractually the parties were strangers to each other, and, as was said in Merchants, supra, there was "nothing to waive."
*193 Nor can the defendant, in the existing circumstances be held liable under the doctrine of estoppel. Assuming that there may be circumstances under which a defendant by its conduct may be estopped from denying the continued existence, or the revival, of a prior existing contractual obligation, we are satisfied that as a minimum requirement to invoking estoppel in a case such as this, it must appear that the conduct in question had, at the very least, the capacity to prejudice the other party.
While there is evidence herein that Ida Richards knew of Phyllis Rubin's marriage in April 1960, there is no evidence whatever that defendant or its agents Julius and Ida Richards, prior to May 26, 1960, were aware that Phyllis had changed her domicile. Indeed, it appears that it was the theft upon which the claim is based which brought that fact to light. In these circumstances it cannot be said that the prior agreement by the company through its agents to include the gold bracelet within the coverage of the Goldberg policy estopped defendant from denying coverage when the facts of Phyllis Rubin's domicile became known to it. The bracelet was an item coverable under the Goldberg policy, and by insuring it the defendant had the right to assume that the coverage requested was that granted by the insuring clause of that policy.
This leaves for appraisal only defendant's acceptance of the additional premium on June 7, 1960, and retention of the same, as conduct which created an estoppel. Clearly, whatever defendant did or did not do on June 7, or thereafter, could not have prejudiced plaintiff in the requisite sense that because of such conduct, and reliance upon it by the plaintiff, she was deterred from protecting herself against the loss she suffered. By June 7 the loss had been incurred and nothing that she might have done then, or thereafter, could have changed the situation. Consequently, whatever criticism may be leveled at defendant for retaining the additional premium, cannot be equated to a finding that defendant's conduct resulted in, or contributed to, plaintiffs' loss.
*194 We conclude, therefore, that Phyllis Rubin's loss was not within the coverage of Goldberg's policy, and that the corporate defendant was free to contest her claim on that ground, unhampered by considerations of waiver or estoppel. Accordingly, the judgments are reversed with the direction that judgment be entered in favor of the defendant.