703 A.2d 316

HERMAN JEFFER, REGINALD F. HOPKINSON, AND JEROME A. VOGEL, INDIVIDUALLY, AND JEFFER, HOPKINSON, VOGEL, COOMBER & PEIFFER, ESQS. (FORMERLY JEFFER, HARTMAN, HOPKINSON, VOGEL, COOMBER & PEIFFER, ESQS.), PLAINTIFFS–APPELLANTS/CROSS–RESPONDENTS, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, DEFENDANT–THIRD PARTY PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. ANTONIO PACELLI AND VINCENT VECCHIOTTI, THIRD–PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1997—Decided December 10, 1997.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Albert C. Lisbona* argued the cause for appellants/cross-respondents (*Dwyer, Connell & Lisbona*, attorneys; *Mr. Lisbona*, on the brief, and reply brief).

*Charles E. Powers, Jr.* argued the cause for respondent/cross-appellant (*Harwood Lloyd, LLP*, attorneys; *Mr. Powers*, on the letter-brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This appeal involves the interpretation and application of an exclusion clause in a professional liability insurance policy and also application of the entire controversy doctrine.

On February 6, 1995, plaintiffs, Herman Jeffer, Reginald F. Hopkinson, and Jerome A. Vogel, individually, and Jeffer, Hopkinson, Vogel, Coomber & Peiffer, Esqs. ("plaintiffs" or "the Law Firm"), filed a complaint for declaratory judgment in the Law Division against defendant, National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"). Defendant filed an answer, counterclaim and third-party complaint for declaratory judgment, naming Antonio Pacelli and Vincent Vecchiotti as third-party defendants. It does not appear that Pacelli or Vecchiotti answered or participated in the proceedings.

On December 21, 1995, defendant moved for summary judgment on the grounds that the plaintiffs violated the entire controversy doctrine by failing to join defendant in the earlier malpractice action brought against plaintiffs by Pacelli and Vecchiotti. Summary judgment on this grounds was denied on February 16, 1996. Defendant sought leave to appeal, which was denied. On July 31, 1996, defendant moved for summary judgment on the coverage issue, and plaintiffs cross-moved for summary judgment. On October 11, 1996, the motion judge, in a letter opinion, granted

summary judgment to defendant and denied plaintiffs' cross-motion.

Plaintiffs appeal and defendant cross-appeals from the denial of summary judgment on the entire controversy doctrine.

The Law Firm and its predecessor maintained a professional liability insurance policy with defendant for the calendar years 1987, 1988, and 1989. The policy bound defendant:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims, including claim(s) for personal injury, first made against the insured and reported to the Company during the policy period or extended reporting period, arising out of any act, error or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer, fiduciary or Notary Public, and caused by the insured or any other person for whose acts, errors or omissions the insured is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this policy.

However, Exclusion (g) of the policy in pertinent part states: "This policy does not apply ... to any claim made by or against or in connection with any business enterprise ... which is owned by any insured or in which any insured is a partner...."

In 1986, a general partnership known as West Paterson Associates (West Paterson) was formed. It was comprised of eight individuals, three of whom, Herman Jeffer, Reginald F. Hopkinson, and Jerome A. Vogel, were members of the Law Firm. Antonio Pacelli, a client of the Law Firm, was also a partner in West Paterson.

West Paterson became the contract purchasers of approximately 15.5 acres of property. In 1987, it assigned the contract to Garrett Mountain Associates (Garrett Mountain), a limited partnership with two partners, Pacelli and Vincent Vecchiotti. Vecchiotti was also a client of the Law Firm. In the contract of purchase and closing of title, Garrett Mountain was represented by Charles M. Kotick, of Robinson, Silverman, Pearce, Aronsohn & Berman. Garrett Mountain later defaulted on the purchase money mortgage. West Paterson retained another law firm and commenced a foreclosure suit in August 1988. Judgment of

foreclosure was entered and the property was reacquired by West Paterson.

On February 6, 1989, Pacelli and Vecchiotti brought an action in the Law Division against Jeffer, Hopkinson, and Vogel individually, and against the Law Firm. Notice of this claim was given to defendant by a former partner of the Law Firm who had been served. The Law Firm was contacted by defense counsel assigned by the insurance carrier. The Law Firm, by letter dated May 16, 1989, requested that defendant not become involved in the suit as it did not view the claims as sounding in malpractice. Defendant then advised the Law Firm that its letter constituted a waiver of any present or future claims to coverage or defenses that the Law Firm may have.

On January 21, 1991, Pacelli and Vecchiotti amended their complaint to include a Seventh Count, specifically alleging that the plaintiffs violated the Rules of Professional Conduct. After plaintiffs' counsel received a report from an expert setting forth the basis for the claimants alleging malpractice, plaintiffs, by letter dated April 1992, forwarded the amended complaint to defendant and requested coverage.

By letter dated May 1, 1992, defendant disclaimed coverage based on the waiver of coverage by plaintiffs' May 16, 1989 letter, and also Exclusion (g) of the insurance policy. The Law Firm relates that it made repeated demands to defendant to alter its position because the claim in the amended complaint was not "made by or against or in connection with any business enterprise owned by the plaintiff in a non-fiduciary capacity."

Subsequently, by letter dated August 3, 1993, plaintiffs informed defendant that it was about to settle with Pacelli and Vecchiotti for the sum of $1,650,000, that this settlement was compelled by defendant's refusal to participate in its defense, that it was affording defendant an opportunity to participate in the settlement, and that it would institute suit against defendant if it did not provide coverage. As defendant continued in its position, the malpractice

claims included in the amended complaint of Pacelli and Vecchiotti were settled on May 26, 1993, as proposed.

 Exclusion (g) withholds coverage:

to any claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith) not named in the Declarations, which is owned by any insured or in which any insured is a partner, or employee (except where he is an employee solely by virtue of having been retained to perform legal services) or which is directly or indirectly controlled, operated, or managed by any insured in a non-fiduciary capacity . . .

Clearly, the claims of Pacelli and Vecchiotti were not made by or against any business enterprise in which an insured had an interest. The amended complaint is brought by Pacelli and Vecchiotti, and it is against Jeffer, Hartman, Hopkinson, Vogel, Coomber and Peiffer individually, and as partners in the Law Firm. Thus, the complaint on its face reflects that the claims were not made on behalf of or against West Paterson. The issue then is whether the claims of Pacelli and Vecchiotti were made "in connection with" West Paterson, a business enterprise not named in the declarations, and in which Jeffer, Hopkinson, and Vogel were partners.

 In considering this issue, "[w]e recognize those well-settled principles governing the interpretation of contracts of insurance that mandate broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations." *Search EDP v. American Home Assurance Co.,* 267 *N.J.Super.* 537, 542, 632 *A.*2d 286 (App.Div.) (citing *Salem Group v. Oliver,* 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992), *certif. denied,* 135 *N.J.* 466, 640 *A.*2d 848 (1993)); *Owens–Illinois, Inc. v. United Ins. Co.,* 264 *N.J.Super.* 460, 486–87, 625 *A.*2d 1 (App.Div.1993), *rev'd on other grounds,* 138 *N.J.* 437, 650 *A.*2d 974 (1994). Exclusionary clauses in liability insurance policies must be strictly construed in favor of the insured, with any doubt as to the existence of coverage resolved in a manner that affords coverage to the insured. *Longobardi v.*

*Chubb Insur. Co. of New Jersey,* 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990); *Sinopoli v. North River Ins. Co.,* 244 *N.J.Super.* 245, 250, 581 *A.*2d 1368 (App.Div.1990), *certif. den.,* 127 *N.J.* 325, 604 *A.*2d 600 (1991). Courts, however, may not create a better policy of insurance than the one purchased by the insured. *Longobardi, supra,* 121 *N.J.* at 537, 582 *A.*2d 1257; *Sinopoli, supra,* 244 *N.J.Super.* at 250–51, 581 *A.*2d 1368.

Exclusion (g) has been interpreted by the Court of Appeals for the Third Circuit, applying Pennsylvania law, in *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.,* 821 *F.*2d. 216, 221 (3d Cir.1987). In *Niagara,* the defendant, Pepicelli, was a shareholder in the Law Firm, and the owner of World of Tires, Inc (World of Tires). *Id.* at 217. World of Tires entered into an agreement with Perma Tread Corporation (Perma Tread) to buy its tire recapping plant. *Ibid.* Pursuant to the agreement, World of Tires obtained fire and hazard insurance from the American Insurance Corporation (American). *Ibid.* A fire destroyed almost all of the assets that World of Tires was in the process of purchasing. *Ibid.* Thereafter, the owners of Perma Tread hired the Law Firm to seek recovery for the loss from American. *Ibid.* American offered to settle the claim, but Pepicelli rejected the offer. *Id.* at 218. The Law Firm then filed suit against American, naming World of Tires and not Perma Tread as the plaintiff. *Ibid.* Thereafter, Perma Tread represented by other counsel sought to intervene as a plaintiff in the fire insurance action, but a directed verdict was entered against it because by that time its claim was barred under the one-year contractual limitation on actions under the fire insurance policy. *Ibid.*

Subsequently, Perma Tread initiated a malpractice action against the Law Firm. *Ibid.* The malpractice action was stayed for a determination of whether Niagara Fire Insurance Company (Niagara) was required to defend the Law Firm under its malpractice policy. *Ibid.* At issue was Exclusion (g), containing language identical to the exclusion in the present case. The Third Circuit held the exclusion not to apply, reasoning:

We must read "in connection with" in the context of the exclusion and the entire policy. The parties agree that the purpose of exclusion "g" in this malpractice policy is to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto his or her malpractice carrier. The malpractice claims of Perma Tread are made in connection with its business, not in connection with the business of World of Tires, and World of Tires is not connected to Perma Tread's malpractice suit in such a way that it will benefit from a malpractice award to Perma Tread. The only connection World of Tires has to that suit is as a player in the factual background. We do not believe that reasonable, disinterested persons, on considering exclusion "g" in the context of the whole policy, would differ as to its meaning; we believe they would agree that the policy does not exclude Perma Tread's claims. If one were to read "in connection with" to include Perma Tread's claims within the exclusion, the phrase would have no discernible limit. Under such an all-inclusive reading, many other non-collusive scenarios would result in the exclusion of malpractice claims from coverage, contrary to the purpose of the policy and the exclusion.

Not only does World of Tires have no interest in the outcome of the malpractice suit, it also did not stand to gain by a collection of the fire insurance proceeds. The record shows that World of Tires was merely a nominal party in the fire insurance litigation. Perma Tread was the real party in interest. Whether as a loss payee under the fire and hazard policy or because of the purchase agreement, Perma Tread would have received any payment made by American.

The claims made by Perma Tread can easily be distinguished from the hypotheticals of collusive suits that Niagara posits in its brief. These hypotheticals all involve potential malpractice claims by a business in which the lawyer has an interest. Neither Pepicelli nor any other lawyer in the Law Firm owns any interest in Perma Tread. Leap and Klasen own all the corporation's shares.

We conclude that the coverage of the policy unambiguously includes Perma Tread's malpractice claims against the Law Firm. As we have noted, however, even if we perceived some ambiguity in the exclusion clauses, we could not allow the judgment below to stand. Ambiguous language, under Pennsylvania law, is to be construed against the insurer.

[*Ibid.* (citations and footnote omitted).]

Plaintiffs urge that the *Niagara* holding applies here. They point out that Vecchiotti was never an owner in West Paterson and that Pacelli neither incurred nor claimed damages of any nature as to his partnership interest in West Paterson. Instead, plaintiffs contend that Vecchiotti and Pacelli's claims are solely for their losses incurred as partners in Garrett Mountain.

The Seventh Count of the amended complaint of Pacelli and Vecchiotti "repeats and realleges all of the allegations of [all previous] paragraphs ..., as if set forth at length." However, because of the clear waiver of coverage as to the allegations of the

original complaint, we will consider only the new allegations of malpractice.

After citing the *Rules of Professional Conduct* as a basis for their claims of actual and/or apparent conflict of interest and unprofessional conduct by the Law Firm and its members, Pacelli and Vecchiotti, referring to their status as clients of the Law Firm and its partners, allege:

60. Defendants represented all partners of West Paterson Associates, other than Antonio Pacelli, but including defendants Herman Jeffer, Reginald F. Hopkinson and Jerome A. Vogel, in the subject transaction, and in particular in negotiating the principal business terms of the subject transaction with their clients, plaintiffs Vincent Vecchiotti and Antonio Pacelli, when such clients clearly were unrepresented, and/or believed themselves to be represented by defendant Vogel and/or other members of the law firm of Jeffer, Hartman, Hopkinson, Vogel, Coomber and Peiffer, although the interest of defendants was directly adverse to that of plaintiffs; defendants (a) could not have reasonably believed that their representation of all partners of West Paterson Associates, other than Antonio Pacelli, but including defendants Herman Jeffer, Reginald F. Hopkinson and Jerome A. Vogel, would not adversely affect their relationship with plaintiffs Vincent Vecchiotti and Antonio Pacelli, (b) did not obtain the consent, in writing or otherwise, of either of plaintiffs as to their lack of independent representation, and (c) failed to provide a full and accurate disclosure of the circumstances to plaintiffs, including the potential for future conflicts. The foregoing conduct of defendants Herman Jeffer, Reginald F. Hopkinson and Jerome A. Vogel with respect to the foregoing was in violation of *RPC* 1.7(a).

61. Defendants represented plaintiffs Vincent Vecchiotti and Antonio Pacelli in matters directly relating to, and forming a part of the subject transaction, including the negotiation of the general business terms of the subject transaction, the obtaining of various loans and a letter of credit from Midlantic Bank, on or about December 21, 1987, and other matters; the aforesaid conduct was in clear violation of *RPC* 1.7(b), inasmuch as that representation was materially impaired and limited by their responsibilities to the partners of West Paterson Associates, other than Antonio Pacelli, and the self-interest of defendants Herman Jeffer, Reginald F. Hopkinson and Jerome A. Vogel, as partners of West Paterson Associates; said defendants (a) could not have reasonably believed that their representation of all partners of West Paterson Associates, other than Antonio Pacelli, but including defendants Herman Jeffer, Reginald F. Hopkinson and Jerome A. Vogel, would not adversely affect their relationship with plaintiffs Vincent Vecchiotti and Antonio Pacelli, (b) they did not obtain the consent of either of the plaintiffs, in writing or otherwise, based upon full and accurate disclosure of the circumstances to plaintiffs, to the plaintiffs' lack of independent representation.

62. Defendants violated *RPC* 1.8(a) inasmuch as Defendants' entry into a business transaction with plaintiffs Vincent Vecchiotti and Antonio Pacelli, and knowing acquisition of a pecuniary interest adverse to plaintiffs Vincent Vecchiotti and

Antonio Pacelli (a) was not upon terms that were "fair and reasonable" to plaintiffs Vincent Vecchiotti and Antonio Pacelli, as evidenced, among other things, by the facts that: (i) in prior real estate transactions in which defendants had represented plaintiffs, defendants would not have permitted plaintiffs to enter into a transaction upon such terms; (ii) plaintiffs were knowingly induced and pressured by defendants to negotiate the essential business terms of the subject transaction directly with defendants, to the point such terms were *fait accompli,* before plaintiffs had any meaningful opportunity to seek the advice and participation of independent counsel, and (iii) plaintiffs were induced and pressured to negotiate the essential business terms of the subject transaction directly with defendants without defendants obtaining the written consent of plaintiffs to dealing directly with defendants, without independent counsel, and (b) plaintiffs' willingness to proceed with the transaction was induced by a series of misrepresentations of defendants to the effect that (*inter alia*): (i) the proposed condominium units would be sold at a price—approximately $450,000—that would be marketable in West Paterson; (ii) that there would be no trouble in financing the development without personal guarantees; (iii) that the transaction was an excellent investment; and (iv) that plaintiffs would not be "hurt" [1]

. . . . . . . .

occurrence of events, such as *inter alia,* the obtaining of financing without personal guarantees, which normally would have been made the subject of conditions precedent in an agreement of this kind.

Defendant argues that significant differences in the factual settings present here minimize the persuasiveness of the reasoning in *Niagara.* It also argues, citing Rowland H. Long, *The Law of Liability Insurance* (1997) § 12C.05[5], that the court in *Niagara* failed to recognize that the purpose of Exclusion (g) is not only to protect against collusive suits which shift an attorney's business loss to his malpractice carrier, but "to distinguish between services rendered by an insured attorney in connection with his practice of law and services in which he acted in another capacity." *Ibid.* Plaintiffs respond that a broad interpretation of the exclusion is unwarranted, and that the exclusion is only appropriate if directed at acts of collusion, where business partners seek to convert business losses into malpractice claims covered by professional liability insurance.

---

[1] Paragraph 63 of the complaint is missing from plaintiffs' appendix. This court's efforts to obtain the missing portion of the amended complaint from the parties to both actions have been unsuccessful.

■ Under Exclusion (g), coverage does not extend to "any claim made ... in connection with any business enterprise ... not named in the Declarations," in which the insured has an ownership interest. The term "in connection with" must be accorded its plain and ordinary meaning. We agree that Exclusion (g) has two purposes: 1) "to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto the malpractice carrier," *Niagara, supra,* 821 *F.*2d at 221; and 2) to avoid the circumstance where an insured so intermingles his business relationships with his law practice that an insurance carrier incurs the additional risk of having to cover the insured for legal malpractice claims relating to the conduct of business, rather than solely out of the professional practice.

While there may be degrees of "connection," we hold that the clause seeks to prevent coverage for legal malpractice that arises from an insured's involvement in a personal business endeavor, as compared to malpractice arising from an attorney's professional relationship with a client. Proof of actual collusion is thereby rendered unnecessary as the evil is avoided by excluding claims related to the business of an entity in which the insured has an ownership interest. Through Exclusion (g), the policy makes it clear that it will not extend coverage to an insured sued for professional malpractice outside of legal matters conducted between the firm and its clients.

■ The summary judgment motion under review required an examination of whether the claims for legal malpractice arose "in connection with" the ownership interest of plaintiffs in West Paterson. The answer to this inquiry is not so one-sided in favor of defendant, as to have warranted the grant of summary judgment. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995). We perceive that upon presentation of the facts at trial and production of the entire Seventh Count of the amended complaint, it will become apparent whether the wrongful acts and damages complained of by Pacelli and Vecchiotti were directly connected to their lawyer-client relationship with

the Law Firm and its partners, or were in connection with the business relationship existing between the parties and losses related to that relationship.

Defendant's cross-appeal, based on an asserted violation of the entire controversy doctrine, is controlled by our recent decision in *McNally v. Providence & Washington*, 304 *N.J.Super.* 83, 698 *A.*2d 543 (App.Div.1997). *Burd v. Sussex Mutual Ins. Co.*, 56 *N.J.* 383, 391, 267 *A.*2d 7 (1970) remains good law. Regarding coverage disputes, *Burd* stated:

> Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.
>
> [*Ibid.*]

In the present state of the law, the entire controversy doctrine was correctly held not to bar this action.

Reversed and remanded.