711 A.2d 909

GREENBERG & COVITZ, A PARTNERSHIP, AND MORTON R. COVITZ, PLAINTIFFS–APPELLANTS, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,[1] DEFENDANT–RESPONDENT, AND DAVID S. GREENBERG, DEFENDANT–APPELLANT, AND SPENCER SAVINGS BANK, SLA, COMMONWEALTH LAND TITLE INSURANCE COMPANY, TICOR TITLE INSURANCE COMPANY, EXCELL MORTGAGE CORP., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 11, 1998—Decided June 1, 1998.

---

[1] Incorrectly designated as "National Union Fire Insurance Company."

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*Shalom D. Stone* argued the cause for appellants Greenberg & Covitz and David S. Greenberg, and Morton R. Covitz, appellant *pro se* (*Walder, Sondak & Brogan,* attorneys; *Mr. Stone* and *Morton R. Covitz,* of counsel and on the joint brief).

*Philip Lindeman, II,* argued the cause for respondent National Union Fire Insurance Company of Pittsburgh, Pa: (*Hellring, Lindeman, Goldstein & Siegel,* attorneys; *Mr. Lindeman,* of counsel and on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Plaintiff Greenberg & Covitz was a New Jersey law partnership. Plaintiff Morton R. Covitz and defendant-cross-claimant David S. Greenberg are New Jersey attorneys who were partners in that firm. Defendant National Union Fire Insurance Company of

Pittsburgh, Pa. was their insurer against liability for claims alleging legal malpractice. Covitz and the law firm of Greenberg & Covitz sued National Union for a judgment declaring that the insurance company was obligated to provide a defense for them and to reimburse them for costs of defense that they had already incurred in an action then pending in the United States District Court for the District of New Jersey which had been instituted against them by Spencer Savings Bank, SLA. The other defendants to the present action, i.e., Greenberg, Spencer Savings Bank, SLA, Commonwealth Title Insurance Company, Ticor Title Insurance Company, and Excell Mortgage Corp., were named as necessary parties. Greenberg cross-claimed against National Union for the same relief sought by plaintiffs and, in addition, asked for a declaration that the insurer was obligated to indemnify him against any claims asserted in the Federal court action.

The gravamen of Spencer Savings Bank's complaint in the Federal court action is that Covitz and Greenberg were the principals of Excell Mortgage Corp., that Spencer was holding approximately $175 million of residential mortgage loans from Excell, and that the law firm of Greenberg & Covitz, the law firm's partners, and Group One, a corporation controlled by Greenberg, "perpetrated a scheme to defraud Spencer ... by causing and facilitating Excell's assignment to Spencer of mortgage loans [which] they knew did not meet Spencer's underwriting standards" and which "Spencer never would have purchased ... had pertinent facts concerning the borrowers and their finances not been fraudulently concealed and falsified." Spencer alleges that, by failing to disclose the second mortgages on closing statements and by deferring the recording of the second mortgages until after the completion of Spencer's title searches, the law firm fraudulently concealed second mortgages on the properties subject to the loans sold to Spencer. Spencer also asserts that Excell, Covitz, and Greenberg knowingly submitted loan applications which contained false information about the income, employment, equity, assets, source of down payment, and the existence of secondary financing of the prospective borrowers. Spencer claims

that it will suffer substantial losses because many of the borrowers whose mortgages it purchased from Excell were not qualified for their loans.

The first five counts of Spencer's complaint characterize the fraudulent activities which it charges to Covitz, Greenberg, their law firm, Excell, and Group One as violations of Federal and state "RICO" statutes. These counts accuse them of being responsible for the alleged violations as principals, aiders and abettors, or conspirators. The sixth count characterizes the same activities as common-law fraud. The seventh count alleges that Excell has breached various provisions of the contracts pursuant to which it sold mortgage loans to Spencer.

The eighth and ninth counts of Spencer's Federal court complaint are directed only against defendants Commonwealth Title Insurance Company and Ticor Title Insurance Company, respectively. Those counts allege that the title insurance companies promised to protect Spencer against losses that it might suffer as the result of fraud committed by Greenberg & Covitz, and Spencer asserts that the title companies are liable accordingly. Commonwealth and Ticor have asserted contingent cross-claims for indemnification against the alleged malefactors.

Spencer filed its original complaint against Excell, Covitz, Greenberg, and the law firm of Greenberg & Covitz on November 6, 1991. By a letter dated December 10, 1991, attorneys for Covitz and the law firm advised National Union that Spencer had filed a complaint which alleged that "the defendants defrauded it by assigning mortgage loans that did not meet the Bank's underwriting standards." National Union was asked to "assume the defense of [Covitz] and the law firm to the extent that any of the allegations are deemed to be the result of the negligent conduct of any partner, attorney, paralegal or employee of the firm of Greenberg & Covitz." A letter dated January 7, 1992, made the same request on behalf of Greenberg.

National Union responded by a letter dated January 31, 1992. This letter notes that Covitz and Greenberg were principals of

Excell who participated in its management, and that the allegations of malpractice arose out of their employment by Excell. National Union's letter refers to the section of the malpractice insurance policy which describes its coverage as extending to claims arising out of the insureds' "rendering or failing to render professional services for others in [their] capacity as ... lawyer[s]." It also refers to and quotes exclusion (g), the "owned enterprise" exclusion. The letter concludes, "In light of your role as partners of Excell Mortgage Corp., and for such other good and sufficient reasons as may appear, the National Union Fire Insurance Company expressly denies coverage with respect to this claim."

Covitz and Greenberg & Covitz filed their original complaint against National Union on March 20, 1995. In National Union's answer to that complaint, the insurer asserted for the first time that it was relying on exclusions (a) and (b) of its insurance policy, as well as on exclusion (g). Exclusion (a) states that the policy does not apply "to any claim arising out of any criminal act, error or omission of any insured." Exclusion (b) says that the policy does not apply "to any claim arising out of any dishonest, fraudulent or malicious act, error or omission of any insured, committed with actual dishonest, fraudulent, or malicious purpose or intent."

Covitz, Greenberg, and the law firm moved for summary judgment declaring that they are entitled to coverage. National Union cross-moved for summary judgment exculpating itself from liability. The Law Division ruled that each of the policy exclusions on which National Union relied defeated coverage. The court rejected the claim of Covitz, Greenberg, and the law firm that they were entitled to have National Union provide them with a defense. The court also denied their motion for reconsideration.

Covitz, Greenberg, and their law firm have appealed. They argue in their main brief that the claims against them are covered by their professional liability insurance policy because those claims arose from their performance of legal services; that National Union waived exclusions (a) and (b) to the coverage of that policy

because its letter denying coverage referred only to exclusion (g); that none of the cited exclusions is applicable; and that they are entitled to coverage under the "innocent insured" clause of the policy because none of them personally participated in the real estate closings. Their reply brief adds the arguments that facts outside of Spencer's pleadings may trigger coverage and that, in any event, they are entitled to coverage for the contingent claims asserted against them by Commonwealth Land Title Insurance Company and Ticor Title Insurance Company.

National Union conceded during oral argument that exclusion (a) was inapplicable, and we agree.

■■■ To determine whether a policy of liability insurance obligates its issuer to defend the insured,

> [t]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.
>
> [*Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div.1953), *aff'd o.b.,* 15 *N.J.* 573, 105 *A.*2d 677 (1954) (citation omitted).]

*See Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 173–75, 607 *A.*2d 1255 (1992); *Ohio Cas. Ins. Co. v. Flanagin,* 44 *N.J.* 504, 511–12, 210 *A.*2d 221 (1965); *S.N. Golden Estates, Inc. v. Continental Cas. Co.,* 293 *N.J.Super.* 395, 400–01, 680 *A.*2d 1114 (App. Div.1996). If a complaint alleges a claim within the coverage of the policy, the insurer is obligated to defend from the inception of the suit. But if, pretrial discovery or the evidence adduced at trial results in a new claim against the insured which is within the coverage of the policy or shows that a previously asserted claim is based on facts which bring it within the coverage afforded by the policy, the insurer may be obligated to indemnify against that new claim, even though it was not alleged in the complaint. In that case, the insurer may be obligated to defend the insured from the date when the new claim was asserted and, possibly, to reimburse the insured for the costs of defense previously incurred. *See SL Indus., Inc. v. American Motorists Ins. Co.,* 128 *N.J.* 188, 198–201, 607 *A.*2d 1266 (1992); *Pettinato v. Cigna Property & Cas. Cos.,*

303 *N.J.Super.* 576, 580, 697 *A.2d* 230 (Law Div.), *rev'd on other grounds sub nom., DeCarlo v. Pettinato,* 303 *N.J.Super.* 410, 697 *A.2d* 145 (App.Div.1997); *cf. Ohio Cas., supra,* 44 *N.J.* at 512–13, 210 *A.2d* 221 (declaratory judgment court determining coverage could take into consideration facts proved at underlying trial); *Jeffer v. National Union Fire Ins. Co.,* 306 *N.J.Super.* 82, 92–93, 703 *A.2d* 316 (App.Div.1997)(seventh count of amended complaint created duty to defend).

██ In the present instance, Spencer's underlying action in the Federal District Court is still awaiting trial. (We were told at oral argument that the claims against Covitz, individually, have been settled and released.) Although Covitz, Greenberg, and their law firm argue that "facts outside of Spencer's pleadings may trigger coverage," the only relevant facts beyond those alleged in the amended complaint and cross-claims which have been brought to our attention are those listed in their statement of material facts submitted in support of their motion for summary judgment pursuant to *R.* 4:46–2(a). In addition to repeating uncontested facts alleged in the pleadings, that statement asserts:

> Spencer has also produced closing documents relating to many of the subject loans. Those documents indicate that G & C [Greenberg & Covitz] represented the buyer-borrowers at many of those closings and, like any other law firm, usually received a standard real estate closing fee, generally less than $1,000 per closing. The closing documents also reveal, however, that the vast majority of the subject loans were not handled by Greenberg or Covitz, individually, but by other attorneys and paralegals in G & C's employ.

The pleadings and this statement therefore determine whether National Union has a present duty to defend Greenberg, Covitz, and the law firm.

We consider next whether the claims which Spencer and the title companies have asserted against Covitz, Greenberg, and their law firm are outside of their insurance coverage because of exclusion (g) of the National Union policy. If that is the effect of exclusion (g), then we need not decide whether National Union waived or is estopped from relying on exclusion (b).

██ Exclusion (g) provides that coverage does not extend

> to any claim made by or against or in connection with any business enterprise ... which is owned by any insured or in which any insured is a partner, or employee (except where he is an employee solely by virtue of having been retained to perform legal services) or which is directly or indirectly controlled, operated, or managed by any insured in a non-fiduciary capacity.

National Union argues that this exclusion is applicable and conclusive because Spencer's complaint alleges that the losses for which it seeks damages resulted from the fraudulent conduct committed by the insureds in the course of their operating the businesses of Excell and Group One.

Covitz, Greenberg, and their law firm make two responses to this argument. Quoting from *Niagara Fire Insurance Co. v. Pepicelli, Pepicelli, Watts & Youngs,* 821 *F.*2d 216, 221 (3d Cir.1987), they assert that." 'the purpose of exclusion "g" . . . is to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto his or her malpractice carrier.' " They argue that they did not collude with Spencer to initiate its suit against them and the title companies. Consequently, they assert, the alleged involvement of Excell and Group One in the mortgage transactions which Spencer claims to have been fraudulent is immaterial, and exclusion (g) is inapplicable.

The flaw in this argument is that the intended function of exclusion (g) is not limited to avoiding insurance company liability for suits collusively instigated by insureds. We rejected that contention in *Jeffer, supra,* 306 *N.J.Super.* at 91–92, 703 *A.*2d 316. In that case, we agreed with *Niagara, supra,* that one purpose of exclusion (g) is to prevent such collusive suits, but we held that an additional purpose is "to avoid the circumstance where an insured so intermingles his business relationships with his law practice that an insurance carrier incurs the additional risk of having to cover the insured for legal malpractice claims relating to the conduct of business, rather than solely out of the professional practice." *Id.* at 92, 703 *A.*2d 316. We stated, "While there may be degrees of 'connection,' we hold that the clause seeks to prevent coverage for legal malpractice that arises from an insured's involvement in a personal business endeavor, as compared

to malpractice arising from an attorney's professional relationship with a client." *Ibid.* We reversed a judgment in favor of the insurer in *Jeffer, supra,* because there was a genuine issue of fact "whether the claims for legal malpractice arose 'in connection with' the ownership interest of plaintiffs in" one of their business entities. *Ibid.*

Covitz, Greenberg, and their law firm also argue that even that broader purpose of exclusion (g) does not justify summary judgment based on that provision because there is at least a genuine issue of fact whether Spencer's law suit arose out of their "involvement in a personal business endeavor," the affairs of Excell and Group One, and not "from an attorney's professional relationship with a client." They point to their statement of material facts, which National Union did not deny and therefore must be deemed to have admitted, *R.* 4:46–2(b), alleging that the acts complained of by Spencer were performed during the course of the firm's providing legal services to the borrowers whose mortgages were sold to Spencer. If that allegation is proved at trial, exclusion (g), considered by itself, would not exculpate National Union from its duty of indemnification. So long as any claim is asserted which is within the coverage of the policy, the insurer is obligated to defend until that claim is eliminated. *Voorhees, supra,* 128 *N.J.* at 174, 607 *A.*2d 1255. "That the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend." *Ibid.* Consequently, we agree that if the only applicable exclusion were exclusion (g), the summary judgment in favor of National Union could not be sustained.

We conclude, however, that National Union did not waive and is not estopped from relying on exclusion (b). The New Jersey cases on which Covitz, Greenberg, and their law firm primarily rely for their waiver and estoppel arguments are *Doto v. Russo,* 140 *N.J.* 544, 659 *A.*2d 1371 (1995); *Morton International, Inc. v. General Accident Insurance Co. of America,* 134 *N.J.* 1, 629 *A.*2d 831 (1993), *cert. denied,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129

L. Ed.2d 878 (1994); *Griggs v. Bertram,* 88 *N.J.* 347, 443 *A.*2d 163 (1982); *Mariani v. Bender,* 85 *N.J.Super.* 490, 205 *A.*2d 323 (App,Div.1964); and *Capece v. Allstate Insurance Co.,* 86 *N.J.Super.* 462, 207 *A.*2d 207 (Law Div.1965). But, those cases do not support the result for which they are cited.

The cited cases fall into two separate categories. *Doto, supra, Morton, supra,* and *Griggs, supra,* deal with estoppel against an insurer to rely on various defenses to claims for insurance coverage. *Mariani, supra,* and *Capece, supra,* deal with the waiver of defenses. The prerequisites for successfully asserting waiver differ from those required for successfully asserting estoppel. To explain our conclusion that neither principle applies to the present case requires us to discuss each of the principles separately.

In *Mariani, supra,* Selected Risks Insurance Company, an automobile liability insurer, denied coverage for a claim against Bender, its insured, solely on the ground that he had deliberately misrepresented to the insurer that he was not involved in the accident from which the underlying claim had arisen. 85 *N.J.Super.* at 494, 497, 205 *A.*2d 323. In an action seeking a declaratory judgment as to coverage, Selected Risks asserted two justifications for its disclaimer, the insured's misrepresentation in violation of the cooperation clause of his policy and, also, his failure to notify it of the accident as soon as practicable. *Id.* at 498, 205 *A.*2d 323. The trial court rejected both defenses. *Ibid.* It held that the time within which the insured had notified the insurance company of the accident was not unreasonable and that his overall conduct did not constitute a material violation of the cooperation clause of the policy. *Ibid.* Affirming that decision, we noted that the insurer had not disclaimed on the ground of late notice and therefore had no right to defend on that ground. *Id.* at 499, 205 *A.*2d 323. We went on to hold that there was substantial evidence to support the trial court's determinations that there had been no material violation of the cooperation clause of the policy, and that the time interval between the date of the accident and the giving of notice was not unreasonable. *Id.* at 499–501, 205 *A.*2d 323.

In *Capece, supra,* when an automobile liability insurer which had denied coverage was sued to establish its duty to indemnify a driver who had caused an injury while driving someone else's automobile with the owner's implied permission, the insurer alleged that the driver had failed to give it notice of the injured party's suit against him and had failed to forward to it every notice, summons, or other process which he received. 86 *N.J.Super.* at 473, 207 *A.*2d 207. We held that these allegations did not constitute a meritorious defense. *Ibid.* We pointed out that the owner of the automobile had given the insurer prompt written notice of the accident and that, until the driver was interviewed by the insurer's representative, he had not known that he was an additional insured under the owner's policy. *Ibid.* We added, "Additionally, since neither of [the insurer's] letters ... referred to the failure of [the driver] to give such notice as a ground for denying coverage, such notice was waived." *Ibid.* (citations omitted).

Significantly, both these "waiver" cases deal with waiver of *notice* in instances where the courts found that the claims for which indemnification was sought were within the coverages afforded by the policies. Courts will readily find that insurers have waived conditions subsequent where the insurers have suffered no detriment from the failure of strict compliance. *See Green v. Selective Ins. Co. of Am.,* 144 *N.J.* 344, 348, 355–57, 676 *A.*2d 1074 (1996) ("seven-year delay between the date of the accident and [insured's] claim ... for UIM benefits" did not relieve insurer absent showing of prejudice); *Sagendorf v. Selective Ins. Co. of Am.,* 293 *N.J.Super.* 81, 96–97, 679 *A.*2d 709 (App.Div.1996) ("[A]n insurer's late-notice defense 'cannot be sustained unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by reason of the insured's failure to comply.' ") (citation omitted). It would be another matter entirely for a court to hold that, by referring in its disclaimer letter to only one of two possible exclusions, and without any detrimental reliance by the insured, an insurer has materially enlarged the insurance coverage which it is obligated to provide.

That is not the law. We explained the distinction in *Goldberg v. Commercial Union Insurance Co.*, 78 *N.J.Super.* 183, 192, 188 *A*.2d 188 (App.Div.1963). In that case, we rejected the insured's contention that the insurer had waived the policy provision limiting theft coverage to property of persons living in the same household as the named insured. *Ibid.* We stated, "On this aspect of the case, the predominant view is that a loss which is not within the coverage of a policy cannot be brought within such coverage by invoking the principles of waiver or estoppel." *Id.* at 191, 188 *A*.2d 188 (citation omitted). The following excerpt from *Home Insurance Co. v. Campbell Motor Co.*, 227 *Ala.* 499, 150 *So.* 486, 489 (1933), which *Goldberg* quotes with approval, elaborates on that proposition:

> "We readily agree with counsel for appellant that if the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract. No one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened, by the application of the principle of waiver or estoppel, to cover loss by cyclone. The effect, in such a case, would be to create a new contract, without a new consideration."
>
> [*Goldberg, supra,* 78 *N.J.Super.* at 192, 188 *A*.2d 188.]

*See also Wheeler v. United States Cas. Co.*, 71 *N.J.L.* 396, 397–98, 59 *A.* 347 (Sup.Ct.1904), *aff'd o.b.*, 73 *N.J.L.* 677, 67 *A.* 432 (E. & A.1906). Similarly, in *Owens–Illinois, Inc. v. United Insurance Co.*, 264 *N.J.Super.* 460, 519–20, 625 *A*.2d 1 (App.Div.1993), *rev'd on other grounds,* 138 *N.J.* 437, 650 *A*.2d 974 (1994), we rejected the claim that the insurers had waived their fraud defenses because their disclaimers did not specifically include fraud as a basis for denying liability. That holding is consistent with the distinction pointed out in *Goldberg, supra.*

■ *Goldberg, supra,* has been modified in one respect by subsequent cases. We stated in that case that the area of coverage provided by an insurance policy could not be expanded by *either* waiver or estoppel. Later cases, including the New Jersey estoppel cases primarily relied on by Covitz, Greenberg, and their law firm, show that reasonable, detrimental reliance by

an insured or, in one case, by regulatory authorities, on words or conduct of an insurer may estop the insurer from denying coverage for a claim which is not within the policy's definition of coverage or is excluded by a specific provision. But those cases also show that detrimental reliance by the insured is a prerequisite to finding that coverage has been expanded by estoppel. *See Doto, supra,* 140 *N.J.* at 560, 659 *A.*2d 1371; *Morton, supra,* 134 *N.J.* at 72–76, 629 *A.*2d 831; *Griggs, supra,* 88 *N.J.* at 355–56, 443 *A.*2d 163; *Harr v. Allstate Ins. Co.,* 54 *N.J.* 287, 306–07, 255 *A.*2d 208 (1969).[2]

*Goldberg, supra,* and similar cases in other jurisdictions establish that National Union's failure to specifically cite the fraud exclusion of its policy in its disclaimer letter did not create fraud coverage for Covitz, Greenberg, and their law firm. *Cf. Waller v. Truck Ins. Exchg., Inc.,* 11 *Cal.*4th 1, 44 *Cal.Rptr.*2d, 370, 388–89, 900 *P.*2d 619, 637–38 (1995) (insurer's "initial demand letter could not give rise to claim for estoppel because [insureds] never reasonably believed, nor could they reasonably believe, that the [insurer's] policy provided potential coverage" for the reason that

---

[2] The insureds also cite *Leone v. Aetna Casualty & Surety Co.,* 599 *F.*2d 566, 569 n. 2 (3d Cir.1979), and *Continental Insurance Co. v. Beecham, Inc.,* 836 *F.Supp.* 1027, 1045–46 (D.N.J.1993), in support of their waiver and estoppel argument.

*Leone, supra,* was decided under Pennsylvania law. 599 *F.*2d at 569. Commenting on two cases cited in a Pennsylvania case that the court distinguished, the *Leone* opinion notes, "Having denied liability without citing failure to timely file proofs of loss, each defendant in these cases was precluded by waiver from relying upon that defense at trial." *Id.* at 569 n. 2. Both cases are instances of waiver of timely notice, although one, and perhaps both, also involved detrimental reliance by the insured on conduct of the insurance company. *See Fedas v. Insurance Co. of Pennsylvania,* 300 *Pa.* 555, 151 *A.* 285, 286–87 (1930); *Simons v. Safety Mut. Fire Ins. Co.,* 277 *Pa.* 200, 120 *A.* 822, 822–23 (1923).

*Continental Ins. Co., supra,* interpreting New Jersey law, held that an insurance company was barred by waiver or estoppel from relying on a defense which the court refers to as the "named insured endorsement." 836 *F.Supp.* at 1045. If, as appears to be the fact, no detrimental reliance was involved, we respectfully suggest that the decision misinterprets New Jersey law, and we disagree with it.

the policy was for commercial general liability and the claim was for shareholder-business dispute); *Weekley v. Jameson*, 221 *Mich. App.* 34, 561 *N.W.2d* 408, 411 (1997), *appeal denied*, —— Mich. ——, 576 *N.W.2d* 169 (1998) (rule that "where a liability insurer notifies an insured of denial of coverage on a specific basis, the insurer may be estopped from alleging additional basis for noncoverage at a later date . . . . may not be used to create liability contrary to the express provisions of the parties' contract") (citations omitted); *Rhinebeck Bicycle Shop, Inc. v. Sterling Ins. Co.*, 151 *A.D.2d* 122, 546 *N.Y.S.2d* 499, 501 (1989) (court rejected plaintiff's contention that exclusions relied on by defendant "were waived by defendant's failure to originally disclaim upon such grounds" because "the doctrine of waiver is inapplicable 'where the issue is the existence or nonexistence of coverage' ") (citations omitted); *Paulson v. Western Life Ins. Co.*, 292 *Or.* 38, 636 *P.2d* 935, 943 (1981) ("[I]f, after loss has occurred, an insurer erroneously denies coverage on the basis of an exclusion, such erroneous denial does not have the effect of creating coverage beyond the terms of the insuring clauses of the policy.").

■ The waiver argument asserted by Greenberg, Covitz, and their law firm does not support their position because they are alleging an enlargement of coverage, not waiver of a lack of notice. Their estoppel argument is unavailing because they were not prejudiced by National Union's disclaiming solely on the basis of exclusion (g). The insurer's disclaimer was notice that it would not undertake their defense against Spencer's claim. They have provided for their own defense since the commencement of the Federal District Court action. *Cf. Griggs, supra*, 88 *N.J.* at 362, 443 *A.2d* 163 (prejudice is presumed where there is a long lapse of time between timely notice by insured and notice by insurer of possible disclaimer of coverage).

■ Exclusion (b) provides ample justification for National Union's refusal to defend the claims asserted against Greenberg, Covitz, and their law firm in the Spencer law suit. That exclusion provides that the policy does not apply "to any claim arising out of

any dishonest, fraudulent or malicious act, error, or omission of any insured, committed with actual dishonest, fraudulent, or malicious purpose or intent." As we have explained, the whole gist of Spencer's complaint is the alleged fraud of Covitz, Greenberg, and their law firm in connection with the sale of mortgage loans, and the test of whether National Union is obligated to defend against that complaint is whether its allegations state a claim within the coverage of the policy. Exclusion (b) makes it abundantly clear that none of the claims stated by the Spencer complaint are within the coverage afforded by the National Union policy.

The title companies' contingent claims are also outside the coverage of the policy. Those claims are predicated on Spencer's complaint and implicitly incorporate its allegations of fraud.

We also reject Greenberg's and Covitz's contention that they are entitled to coverage under the "Innocent Insured" provision of the policy. That provision, insofar as pertinent, states:

Whenever coverage under this policy would be excluded . . .

(a) because of [Exclusion (b) ] . . .

the Company agrees that such insurance as would otherwise be afforded under this policy shall cover and be paid with respect to each and every insured who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions described in any such exclusion. . . .

At this stage of the proceedings, the allegations relevant to Covitz's and Greenberg's claims that they are entitled to shelter under the "Innocent Insured" provision are those of Spencer's complaint and their statement of material facts. Those allegations are inconsistent with the claim that Covitz and Greenberg did not personally commit, participate in, acquiesce in, or remain passive after having personal knowledge of one or more of the alleged acts of fraud against Spencer.

The judgment appealed from is therefore affirmed insofar as it declares that National Union has no duty of Defense or of indemnification for the claims which have been alleged in the underlying Federal District Court action. We do not attempt to decide what, if any, rights Greenberg and the law firm of Green-

berg & Covitz may have if facts are established in that action which differ from those heretofore alleged.

This matter is remanded to the Law Division for the entry of a judgment consistent with this opinion.