**ELIZABETHTOWN WATER COMPANY, Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE CO. and Centennial Insurance Co., Defendants.**

No. Civ.A. 95–3326 (AMW).

United States District Court,
D. New Jersey.

Aug. 3, 1998.

See also, 998 F.Supp. 447.

Carella, Byrne, Bain, Gilfillian, Cecchi, Stewart & Olstein, Roseland, NJ, for Plaintiff Elizabethtown Water Company.

Smith, Stratton, Wise, Heher & Brennan, Princeton, NJ, for Defendant Centennial Insurance Co.

*OPINION*

WOLIN, District Judge.

Once again, this Court must review a motion for summary judgment in this case. Centennial Insurance Company ("Centennial"), defendant, has filed the current motion because exclusions in the insurance policies it issued to Elizabethtown Water Company ("Elizabethtown"), plaintiff, are the same as the one the Court based its grant of summary judgment for Hartford Casualty Insurance Company ("Hartford"), defendant. In particular, Centennial argues that the "contract liability" exclusions in its Comprehensive General Policies from 1987–88 and 1988–89 ("CGL Policy") and Umbrella Policy are the same as that contained in the Hartford policies. Thus, it concludes that the Court

should enter summary judgment in its favor based on the law of the case.

Elizabethtown cross-moves for summary judgment arguing that Centennial should not be allowed to exclude coverage based on its contract liability exclusions. Elizabethtown argues that the Court should preclude Centennial from relying on the exclusions because of estoppel or waiver, or bar the motion as a sanction for filing the motion after the deadline for dispositive motions. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court has decided this motion without oral arguments.

## BACKGROUND

### I. Distant History—Discovery Problems

Elizabetown spends a great deal of time in its brief recounting the discovery disputes that it had with Hartford and Centennial. The Court will briefly review the relevant portions of Elizabethtown's submissions.

On May 28, 1997, Magistrate Judge Pisano presided over a Local Rule 15(E) conference to resolve the discovery disputes. At the conference, Judge Pisano ordered Centennial and Hartford to advise Elizabethtown of the specific exclusions that applied to this coverage dispute. (Fenlon Cert. ¶ 7). Centennial did not specify the exclusions, but relied on its previous answer to Interrogatory No. 11:

> 11. Identify each and every policy exclusion which you contend precludes coverage to Elizabethtown with respect to the claims asserted against it in the Underlying Action.
>
> ANSWER: Centennial objects to this Interrogatory .... Subject to and without waiving these objections, or its general objections, *Centennial refers Plaintiff to its Answer in this case, to the letters attached as Exhibits B, D, and F to Centennial's Motion for Partial Summary Judgment, and to the Centennial policies at issue.*

(Fenlon Cert.Ex. J) (emphasis added). Paragraph 18 of the Answer states: "Coverage is barred to the extent that the claims asserted arise from liability assumed under a contract and the policies exclude coverage for contractual liability." (Fenlon Cert.Ex. I). The Answer specifically refers to the "Failure to Supply" Endorsement as a grounds for barring coverage. It also provides that Elizabethtown's claims were subject to all the exclusions in the policies. Centennial filed amended answers to Elizabethtown's Interrogatories, but did not change its response to No. 11.

Due to discovery problems, Judge Pisano extended the cutoff date for discovery from August 1, 1997, to September 15, 1997, to December 15, 1997, and finally to January 6, 1998. He also ordered that all dispositive motions had to be returnable on February 9, 1998, but he later revised that date to March 9, 1998, and later to March 23, 1998. Hartford, which filed its moving brief after Centennial filed its moving brief, argued that summary judgment should be granted because of, *inter alia,* General Exclusion K. Centennial did not join that motion or seek to amend its brief to assert its similar exclusion.

### II. Recent History

The Court will not review the facts of this case because this Opinion serves as a supplement to the earlier Opinion and because the earlier Opinion exhaustively reviewed the background of this case. The Court will briefly discuss the relevant portion of the first Opinion and the procedural events that have occurred since the first Opinion.

On March 27, 1998, the Court reviewed defendants' motions for summary judgment, and plaintiff's motion to strike. The defendants moved for summary judgment on the grounds that their insurance policies did not cover plaintiff's settlement of the underlying loss. In granting Hartford's motion, the Court found that General Exclusion K in Hartford's policy prohibited Elizabethtown from receiving coverage for its loss. General Exclusion K excluded coverage for:

K. Property Damage to:

. . .

(3) Property of which your product or your work forms a part or property

that has not been physically injured, arising out of:

(b) A delay or failure by any insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

The Court denied Centennial's motion because the Court found that issues of fact remained about the Failure to Supply Water Exclusion and the coverage provision in its policies. Centennial did not raise or join Hartford's motion for summary judgment on the issue of contract liability.

Three days after the Court issued its Opinion, Centennial asked Judge Pisano to adjourn the trial date of May 5, 1998, so that it could file a renewed motion for summary judgment based on its contract liability exclusions. Elizabethtown vehemently argued that Centennial was estopped or barred from filing the motion because it had violated Judge Pisano's deadline for dispositive motions.

Judge Pisano held a hearing, and sanctioned Centennial for not filing its motion for summary judgment within the deadline for dispositive motions. Judge Pisano ordered Centennial to pay Elizabethtown's costs in responding to this motion. He also found that this Court should decide whether Centennial should be estopped or barred from bringing the motion.

On April 13, 1998, Centennial amended its answer to Elizabethtown's Interrogatory No. 11 to include General Exclusion (m) in the CGL Policy, General Exclusion (e) in the Umbrella Policy, and Exclusion (h) in the forms for property damage liability assumed by Elizabethtown. Exclusion (m)(1) of the CGL provides: "This insurance does not apply: to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the **named insured** of any contract or agreement...." Exclusion (e) of the Umbrella Policy provides: "This insurance does not apply: ... to loss of use of tangible property which has not been physically injured or destroyed re-

sulting from (1) a delay in or lack of performance by or on behalf of the insured of any contract or agreement...."[1]

During the proceedings before Judge Pisano, Elizabethtown moved the Court to reconsider its decision on the grounds, *inter alia*, that Hartford waived its right to rely on General Exclusion K because Hartford did not list the exclusion in its disclaimer letter. On May 29, 1998, the Court denied Elizabethtown's motion primarily because Elizabethtown had not shown that Hartford deliberately chose not to rely on the exclusion. In particular, the Court found that Hartford's failure to list the exclusion in its disclaimer letter did not permanently bar it from claiming that the exclusion prohibits coverage. In addition, the Court stated that Elizabethtown learned about Hartford's reliance on General Exclusion K in March 1996, which gave it ample time to prepare arguments and discovery on why the exclusion should not apply.

## DISCUSSION

### I. Threshold Issue: Do Centennial's Exclusions Apply in This Case?

If Centennial's contract liability exclusions do not apply to this case, then the Court need not address the other arguments. Thus, the threshold question is whether the contract liability exclusions would bar coverage if Elizabethtown did not raise estoppel, waiver, and a bar as a sanction. Although the Court has already determined that Hartford's General Exclusion (K) precluded it from covering Elizabethtown's loss, the Court cannot decide the issue based on the prior Opinion because Centennial's CGL Policy contains an Endorsement not in Hartford's policy. Thus, the Court must examine Centennial's CGL Policy and the Endorsements.

The CGL Policy contains many exclusions, the first, (a), provides: "This insurance does not apply: (a) to liability assumed by the **insured** under any contract or agreement

---

1. The Court will not discuss Exclusion (h) because neither side disputes that that exclusion bars coverage.

except an **incidental contract. . . .**" Incidental contracts are defined as

> any written (1) lease of premises; (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) **elevator** maintenance agreement.

Elizabethtown and Centennial later entered into the "Broad Form Comprehensive General Liability Endorsement" ("the Endorsement"), which extends the definition of incidental contract "to include any oral or written contract or agreement relating to the conduct of the named insured's business."

Elizabethtown contends that the CGL Policy does not preclude coverage because the Endorsement expands Centennial's liability for contracts from incidental contracts to all contracts related to Elizabethtown's business. Elizabethtown also claims that the Endorsement does not contain a counterpart for Exclusions, and that therefore, the Court's ruling on Hartford's General Exclusion K is inapplicable to Centennial. Finally, Elizbethtown's expert opined that the Contractual Endorsements to the CGL's policies provides coverage for the underlying claim in this case. (Fenlon Cert.Ex. BB).

■ Centennial does not dispute the fact that the Broad Form Comprehensive General Liability Endorsement expands the definition of incidental contracts, which the CGL Policy covers, to include all contracts related to Elizabethtown's business. However, Centennial contends that the Endorsement is relevant only to Exclusion (a), which deals with incidental contracts, and not to Exclusion (m)(1). Moreover, Centennial argues that the Endorsement deletes certain exclusions and states that it is subject to others. Centennial concludes that Exclusion (a) and its endorsement do not negate the effect of Exclusion (m)(1).

In the initial Opinion, the Court outlined the principles to be used when interpreting insurance contracts. Rather than repeat

them here, the Court will rely on its previous statement.

The Court finds that Exclusion (m)(1) applies to this case because Exclusions (a) and (m)(1) are independent and do not limit the exclusivity of the other. *See Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 246, 405 A.2d 788 (1979) (stating that it agreed with principle that language in one exclusion does not affect another exclusion). Exclusion (a) and the Endorsement are concerned with Elizabethtown assuming liability for contracts it entered into in the course of business whereas Exclusion (m)(1) deals with Elizabethtown's lack of or delay in the performance of its contract. The Endorsement to Exclusion (a) does nothing more than extend the assumption of liability from incidental contracts to every contract. It does not delete or modify Exclusion (m)(1), and thus, Elizabethtown's argument that the Endorsement bars Centennial from relying on Exclusion (m)(1) is unpersuasive and misses the mark. The Endorsement's deletion and modification of other exclusions bolsters the Court's finding because if the parties wanted to alter the impact of Exclusion (m)(1), they could have and would have included their intent in the Endorsement.

No question exists about the applicability of Exclusion (e) of the Umbrella Policy because Centennial and Elizabethtown never entered into any Endorsements regarding that exclusion.

## II. Waiver and Estoppel

■ Before examining whether waiver or estoppel apply to this case, the Court will first distinguish and discuss the principles underlying the doctrines. In *Merchants Indemnity Corp. v. Eggleston,* the New Jersey Supreme Court eloquently described the difference between the two doctrines:

> Analytically, a distinction should be drawn between (1) cases in which the loss is not within the policy coverage and (2) cases in which the policy does cover but fraud in the inception or a breach of the policy is claimed.
>
> Where the policy does not cover the loss, it seems inappropriate to speak of a waiver since there is nothing to waive. Rather,

the relevant thought is "estoppel," and undoubtedly prejudice is an essential ingredient.

37 N.J. 114, 129, 179 A.2d 505 (1962); *accord* Barry R. Ostrager & Thomas R. Newman, *Insurance Coverage Disputes* § 2.06, at 56 (6th ed.1993) (citation omitted).[2] "Ordinarily, both waiver and estoppel present triable questions of fact." Ostrager & Newman, § 2.06, at 57 (citation omitted).

## A. Waiver

■ Waiver involves the intentional relinquishment of a known right. *See Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276, 291, 544 A.2d 377 (1988). To prove waiver, a party must show that the other party knew of its rights and deliberately intended to relinquish them. *See id.* Generally, courts find waiver "where there is direct or circumstantial proof that an insurer intended to abandon a policy defense." Ostrager & Newman, § 2.06[a], at 57 (citations omitted). Thus, if Elizabethtown can show that Centennial intentionally decided not to rely on Exclusion (m)(1) in the CGL Policy and Exclusion (e) in the Umbrella Policy, the Court will have to grant Elizabethtown summary judgment.

In *Hatco Corp. v. W.R. Grace & Co.– Conn.*, 801 F.Supp. 1334, 1363 (D.N.J.1992), this Court found that the insurer did not waive its right to raise exclusions that were not listed in the reservation of rights letter. The reasoning behind that finding was that a delay in raising an exclusion should not be deemed a waiver. When an insured and insurer contest whether a policy governs. a given loss, the insurer may rely on an exclusion so long as it informs the insured in an early stage of the litigation. *See Continental Ins. Co. v. Beecham*, 836 F.Supp. 1027, 1045 (D.N.J.1993). In *Beecham*, a sister court held that an insurer waived its right to rely on certain exclusions because it raised them for the first time after the close of discovery and on a motion for summary judgment. *Id.; see also Mariani v. Bender*, 85 N.J.Super.

490, 499, 205 A.2d 323 (App.Div.1964) (finding that insurer could not rely on notice clause in declaratory judgment suit between two insurers where insurer did not disclaim coverage on that ground in underlying suit); *Capece v. Allstate Ins. Co.*, 86 N.J.Super. 462, 473, 481, 207 A.2d 207 (Law Div.1965) (ruling that insurer waived right to notice when it did not include defense of notice in its disclaimer letters).

The Appellate Division's recent decision in *Greenberg & Covitz v. National Union Fire Insurance Co.*, 312 N.J.Super. 251, 711 A.2d 909 (App.Div.1998), discusses the principles established in the earlier cases. In *Greenberg*, after Savings Bank sued Greenberg & Covitz, a law firm, for perpetrating a scheme to defraud it, Greenberg & Covitz asked National Union, its malpractice insurer, to defend it in the underlying suit. National Union responded with a disclaimer letter in which it stated that the policy did not cover the underlying suit and that exclusion (g) barred coverage. Greenberg & Covitz then filed suit against National Union. In its Answer, National Union raised an exclusion that it had not listed in its disclaimer letter.

In holding that National. Union had not waived exclusion (b), the Appellate Division reviewed the waivers in *Mariani* and *Capece*. *Id.* at 6–7. The panel found the fact that both cases involved notice clauses was significant because "[c]ourts will readily find that insurers have waived conditions subsequent where the insurers have suffered no detriment from the failure of strict compliance." *Id.* at 7. "It would be another matter entirely for a court to hold that, by referring in its disclaimer letter to only one of two possible exclusions, and without any detrimental reliance by the insured, an insurer has materially enlarged the insurance coverage which it is obligated to provide." *Id.* The panel found support for this proposition in *Goldberg v. Commercial Union Insurance Co.*, 78 N.J.Super. 183, 191, 188 A.2d 188 (App.Div.

2. Centennial's assertion that waiver is inappropriate in this case because the exclusions remove the underlying loss from coverage is erroneous. The New Jersey Supreme Court's statement that waiver does not apply to a policy that does not cover the loss implicates the general liability

provisions rather than exclusions. For example, an insurer could not waive the defense that an automobile insurance policy did not cover a homeowner's loss because automobile insurance policies do not cover such losses. Thus, there would be nothing to waive.

1963), where the Appellate Division stated: "[T]he predominant view is that a loss which is not within the coverage of a policy cannot be brought within such coverage by invoking the principles of waiver or estoppel." *Id.* The *Greenberg* panel ultimately rejected the law firm's waiver argument because they sought an enlargement of coverage. *Id.* at 9.

■ This Court holds that Centennial waived its right to rely on Exclusion (m)(1) in the CGL Policy and Exclusion (h)(1) in the Umbrella Policy for five reasons. First, although not dispositive, Centennial wrote three disclaimer letters and never mentioned the contract exclusions. Centennial did, however, reserve its rights to rely on other exclusions. Second, Centennial's claim that Paragraph 18 asserted the contract liability exclusions is erroneous. Paragraph 18 provides: "Coverage is barred to the extent that the claims asserted *arise from liability assumed under a contract* and the policies exclude coverage for contractual liability." As stated in the previous section, that language is relevant to Exclusion (a)(1), which deals with the assumption of liability for incidental contracts, and not Exclusion (m)(1) in the CGL Policy or Exclusion (h)(1) in the Umbrella Policy. The latter exclusions deal with the lack of or delay in the performance of a contract, which is what is at issue in this case. Thus, Centennial's Answer does not place Elizabethtown on notice of its reliance on Exclusion (m)(1) in the CGL Policy and Exclusion (h)(1) in the Umbrella Policy. Centennial's statement in its Answer that Elizabethtown's claim was subject to all the provisions in the policies does not preserve Centennial's right to raise Exclusion (m)(1) of the CGL Policy and Exclusion (e) of the Umbrella Policy after the deadline for dispositive motions had passed.

Third, unlike Hartford, Centennial has not produced any internal memorandum to show that it considered the contract liability exclusions. In fact, Theresa Walczak, who was Centennial's claim representative for Elizabethtown's claim, wrote in her computer notepad and informed her supervisors that Centennial should disclaim coverage based on definitions in the policies, the Failure to Supply Water Endorsement, and

Late Notice. (Fenlon Cert.Ex. Z.) The supervisors agreed with Walczak except for the applicability of the Failure to Supply Water Endorsement. Fourth, at her deposition, Walczak testified that she thought this case involved a breach of contract rather than an accident, i.e., occurrence. (Fenlon Cert.Ex. AA.) Despite her thinking and her policy to include every reason for disclaiming coverage in her disclaimer letters, Walczak never mentioned her contract theory to Elizabethtown or her supervisors.

Fifth, this Court finds that *Beecham, Hatco, Mariani,* and *Capece* govern this case, and that *Greenberg* is inapposite. The Court will not follow *Greenberg* because unlike the insurer in that case, Centennial did not include the exclusions in its Answer. Moreover, the Court finds *Greenberg's* limitation of waiver to notice clauses to be too narrow. *Beecham* correctly recognized that courts cannot allow insurers to hide the exclusions they plan to use until trial or summary judgment. Insurers have a duty to notify insureds of the exclusions they plan to use before discovery is complete and before the deadline for dispositive motions is reached. Furthermore, *Greenberg's* reliance on *Goldberg* is not completely accurate. *Goldberg's* statement that waiver and estoppel cannot be used to expand coverage referred to whether an individual fell within the insurance policy, and not to an exclusion. This Court will continue to rely on the principle that an insurer can waive its right to use an exclusion when it fails to raise it timely.

The Court concludes that Centennial has intentionally relinquished its right to raise its contract liability exclusions because it raised them after the deadline for dispositive motions and less than a month before the trial date. Thus, Centennial will not be permitted to raise Exclusion (m) in the CGL Policy or Exclusion (e) of the Umbrella Policy at trial. The Court's ruling on this issue renders the remainder of Elizabethtown's and Centennial's motions moot.

## CONCLUSION

For the reasons stated *supra*, the Court will deny Centennial's motion for summary judgment, and will grant Elizabethtown's

cross-motion on the issue of waiver. Thus, Centennial will be precluded from raising Exclusion (m)(1) in the CGL Policy or Exclusion (e) of the Umbrella Policy at trial.

*ORDER*

In accordance with the Opinion the Court issued today,

It is on this 4th day of August 1998,

ORDERED that Centennial's motion for summary judgment is denied;

AND IT IS FURTHER ORDERED that Elizabethtown's cross motion for summary judgment is granted on the issue of waiver; thus Centennial is precluded from raising Exclusion (m)(1) in the CGL Policy and Exclusion (e) of the Umbrella Policy at trial.