781 A.2d 1119 (2001)
344 N.J. Super. 350
Saleem PASHA, Yvonne Coleman, Marvin Coleman, Douglas F. Coleman, and Alimin Pasha, Plaintiffs-Appellants,
v.
The ROSEMOUNT MEMORIAL PARK, INC., Defendant-Respondent, The Perry Funeral Home, Inc. and John Does 1-5, Fictitious names whose present identities are unknown; and ABC Corporations 1-5, fictitious names whose present identities are unknown, Defendants.
Rosemount Memorial Park Association, Defendant-Respondent/Third-Party Plaintiff,
v.
Pennsylvania Millers Mutual Insurance Company, John A. Rocco Company, Inc., Defendants-Respondents/Third-Party Defendants, Seabord Surety Co., and FJ Wilkes Company, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2001.
Decided October 16, 2001.
*1120 William L. Gold, West Orange, argued the cause for appellant (Bendit Weinstock, attorneys; Mr. Gold, on the brief).
Lane M. Ferdinand, Springfield, argued the cause for respondent/third party defendant Pennsylvania Millers Mutual Insurance Company.
The brief of respondent/third party plaintiff Rosemount Memorial Park Association was suppressed.
The brief of respondent/third party defendant John A. Rocco Company, Inc. was suppressed.
Before Judges BAIME, NEWMAN and FALL.[1]
*1121 The opinion of the court was delivered by BAIME, P.J.A.D.
These appeals present questions concerning the extent to which an insurer who declines to defend a claim against its insured is bound by a settlement agreement entered into by its insured and the injured third party. Also at issue are coverage questions pertaining to the insurance policy issued by the insurer. In separate proceedings, the Law Division concluded: (1) plaintiffs, to whom the rights of the insured were assigned, failed to satisfy their burden of producing evidence that the settlement agreement was reasonable and untainted by bad faith, and (2) the insurer was estopped from denying coverage on grounds that were not presented in its pre-settlement letter disclaiming liability. Plaintiffs appeal from the first holding, and the insurer appeals from the latter. We affirm the judgment entered.

I.
Plaintiffs are the five surviving children of Dorthea Coleman. On February 18, 1993, Coleman was to be laid to rest at Rosemount Memorial Park. Due to excessive rains, the grave contained approximately three feet of water. As the casket was lowered into the grave, it tilted and sank to the bottom. Apparently, cemetery workers were less than cooperative in attempting to re-attach the burial equipment so that the casket could be retrieved because they feared that the grave might "cave in" due to the water content of the surrounding soil. When the casket was pulled from the grave, it was discovered that water had seeped into the structure. Coleman's body was "reconditioned" before being buried at another site.
Plaintiffs brought suit against Rosemount, seeking damages for emotional distress. Rosemount notified its insurer, Pennsylvania Millers Mutual Insurance Company (Penn Millers) who declined the claim on the grounds: (1) the incident involving the casket did not constitute an "occurrence" as defined by the policy, (2) coverage was rendered nugatory by the professional liability exclusion, and (3) Rosemount did not report the accident in a timely manner.
On July 24, 1996, plaintiffs and Rosemount entered into a settlement agreement in the amount of $500,000. Rosemount agreed to pay plaintiffs $30,000. Rosemount's rights against Penn Millers were assigned to plaintiffs. Plaintiffs were to pay Rosemount one-third of the amount they recovered against Penn Millers or $30,000, whichever was less. Rosemount's $30,000 payment and plaintiffs' agreement to return that amount if it were successful in its suit against Penn Millers were to be kept confidential. No similar confidentiality agreement was entered into with respect to plaintiffs' $500,000 settlement with Rosemount. Indeed, plaintiffs' attorney indicated it was anticipated that the settlement agreement with Rosemount would be given some publicity and thus serve as a "wake-up call."
A consent judgment was entered in favor of plaintiffs against Rosemount. Penn Millers moved to set aside the judgment on the ground that it was "collusive." Based upon the documentary submissions, the Law Division granted Penn Millers' motion. In reaching its conclusion that the settlement agreement was tainted by bad faith, the court stressed that no medical or psychological reports had been prepared supporting plaintiffs' claim for emotional distress damages. The court also emphasized that Rosemount was willing to enter into a publicly disclosed consent judgment against it for $500,000, but insisted on keeping secret its payment of only $30,000 to plaintiffs, which payment was to be returned if plaintiffs were successful *1122 in their action against Penn Millers.
The coverage questions raised by Penn Millers were decided in separate proceedings. The court initially concluded from the documentary submissions that the incident involving the casket constituted an "occurrence" as defined by the policy. As to the reach of the professional liability exclusion, the court conducted a bench trial respecting whether, as urged by Penn Millers, the policy language should be reformed. At the conclusion of the trial, the court found no basis for Penn Millers' request for reformation.
Penn Millers moved for summary judgment, contending that plaintiffs' claim for emotional distress did not allege "bodily injury," and thus was not covered by the insuring agreement. Plaintiffs responded that Penn Millers had not previously declined liability on this basis and was, therefore, estopped from asserting that the claim was not covered under the policy. A hearing was conducted on this issue. Penn Millers introduced a series of letters which, it argued, provided Rosemount with actual and constructive notice of its declination on the ground that the underlying claim did not allege "bodily injury." Penn Millers also argued that its declination letter contained a "catch-all phrase" which reserved its right to deny liability "[f]or the reasons given and for any other good and valid reason that may come to light...."
Following its review of these documents, the court held that Penn Millers was estopped from declining liability on the basis that plaintiffs' underlying claim did not allege "bodily injury." The court stressed that this ground for denying coverage had not been urged prior to the settlement. The court determined that Penn Millers could not decline liability on this basis after plaintiffs and Rosemount had changed their positions by entering into the settlement agreement. A judgment in plaintiffs' favor for $30,000 was entered. These appeals followed.

II.
We agree with the Law Division's conclusion that the settlement agreement between plaintiffs and Rosemount was not binding upon Penn Millers. The circumstances surrounding the agreement demonstrated collusion and bad faith.
In Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982) our Supreme Court addressed the situation where a policyholder settles directly with the claimant because the insurer disputes coverage. In Griggs, the policyholder was sued by the claimant for personal injuries suffered during a fight. Id. at 352, 443 A.2d 163. The policyholder sought insurance coverage for the personal injury lawsuit against him, but his insurance company disclaimed liability. Id. at 354-55, 443 A.2d 163. Prior to trial, the policyholder negotiated a settlement in which he assigned his rights under the insurance policy to the claimant. Id. at 354, 443 A.2d 163. The policyholder also stipulated to a judgment in favor of the claimant in exchange for a covenant not to execute. Ibid. The insurance company argued, among other things, that the settlement arrangement was unenforceable because "it was unreasonable and negotiated in bad faith." Id. at 365, 443 A.2d 163. In examining this issue, the Court noted that an insurance policy is a contract of adhesion, making it entirely appropriate to place the ultimate burden of persuasion on the insurer. Id. at 366, 443 A.2d 163. However, the Court determined that it was neither "fair [n]or practical to require the carrier also to assume the burden of producing evidence" because the insured would be in a better position to proffer evidence regarding the settlement. Id. at 367, 443 A.2d 163. It was thus said that *1123 "the insured, without undue hardship or fundamental inequity, can best marshal the basic facts relating to the settlement." Ibid.
The Court explained that placing the initial burden of production on the insured to demonstrate that the settlement was "prima facie reasonable in amount and untainted by bad faith," serves to protect the carrier from having to pay a settlement reached through collusion between the insured and the injured third party or which is otherwise unreasonable and the product of bad faith. Ibid. The Court set forth the shifting burdens in the following terms:
We therefore hold that a settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith. The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer. This rule reasonably accommodates and compromises the competing interests of the parties and considerations of public policy. It will discourage collusive or overreaching impositions upon insurance carriers and, at the same time, will be conducive toward encouraging settlement and protecting an insured in its efforts amicably to resolve a claim against it after having been abandoned by its carrier.
Id. at 368, 443 A.2d 163. Accordingly, the Court adopted a bifurcated analysis for the burdens imposed on each party, with the insured carrying the initial burden of production. Ibid.
Within this analytical framework, we agree with the Law Division that plaintiffs failed to satisfy their burden of producing evidence that the settlement agreement was reasonable in amount and entered into in good faith. In an effort to meet its burden, plaintiffs presented certifications from their own attorney, Abbott Brown, and counsel for Rosemount, Jonathan Kuller.
Brown asserted that the underlying claim for mishandling a corpse had been recognized in Strachan v. John F. Kennedy Mem'l. Hosp., 109 N.J. 523, 538 A.2d 346 (1988) and Muniz v. United Hosps. Med. Ctr. Presbyterian Hosp., 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977). He also asserted that Rosemount's burial grounds had water problems four or five months prior to the incident in question. Other than an oblique reference to the "complexity of the case," Brown's certification contained no description of the factors he took into consideration in the settlement of the case or the factors that ordinarily come to play in the settlement of a generic case of this kind. The certification is barren of any discussion of damages or injury, physical or psychological. Brown instead merely noted his conclusion that "$100,000 per plaintiff was [his] best guess" as to the amount of a jury verdict.
Kuller's certification was similarly devoid of content respecting the factors that played a role in arriving at the settlement. In his certification, Kuller, like Brown, noted that a cause of action for mishandling a corpse had been recognized by our Supreme Court in Strachan. Kuller also observed generally that it was within Rosemount's interest to "cap" legal fees and limit its exposure.
Plaintiffs also presented the expert opinion of Dennis Donnelly. Donnelly asserted that the settlement was reasonable in light of the "extremely wide range of sustainable verdicts and even greater range of reasonable settlements." Donnelly also cited the fact that the case would be tried in Essex County where it was alleged "juries tend to award higher verdicts than juries elsewhere in all types of cases." *1124 Donnelly also observed that plaintiffs shared the ethnic characteristics of those who might be expected to serve as jurors.
Both Brown and Donnelly recited the fact that Ward Boote, Penn Millers' claims representative, in Penn Millers' letter disclaiming coverage, observed that a verdict could exceed the policy limit, $1,000,000. However, neither Boote nor Brown, Kuller, or Donnelly cited any factual support for such a proposition.
We emphasize, as did the Law Division, the disparity between the amount paid by Rosemount to the plaintiffs, $30,000, and the total amount of the settlement, $500,000. We also stress that plaintiffs and Rosemount agreed to make public the $500,000 settlement but to conceal the fact that Rosemount was responsible for only $30,000 and could retrieve that payment in the event plaintiffs were successful in pursuing the claim against Penn Millers.
Examining the proofs submitted by plaintiffs, we are satisfied that they failed to sustain their burden of production under Griggs. See Griggs v. Bertram, 88 N.J. at 368, 443 A.2d 163. In Kelly v. Berlin, 300 N.J.Super. 256, 269, 692 A.2d 552 (App.Div.1997), we described the factors a jury should consider in determining the reasonableness of a settlement, albeit in a slightly different factual setting. We said:
The many factors that go into a settlement are not within the knowledge of the average juror. An expert in the settlement of claims, such as an experienced torts attorney or an experienced claims adjuster, is necessary to explain the various factors which are taken into consideration in the settlement of a case of this kind. Such an expert could explain which factors are relevant and how they affected this matter to enable the jury to determine whether the defendant doctors' negligence caused plaintiff to settle for a lower amount than he otherwise would have, and, if so, the amount of damages plaintiff sustained as a result. For example, such expert testimony could render a comparison of similar claims in the area, an analysis of how plaintiff's other injuries would have affected the settlement of his lower back injury, an opinion as to the value of plaintiff's lower back injury in light of its projected severity when the case settled, and an analysis of how legal issues would have affected the settlement amount.
Ibid.
We recognize that plaintiffs were only required to sustain their burden of production, and that the Law Division was obliged to consider the facts in a light most favorable to them. Brill v. The Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). We also acknowledge that the question confronting the court was the reasonableness of a business decision, and not "[w]hat a particular jury in fact would decide as to the liability ... or the amount of damages...." Jiffy Foods Corp. v. Hartford Accident & Indem., 331 F.Supp. 159, 160 (W.D.Pa.1971). We acknowledge that we are concerned with the soundness of a business judgment to settle particular litigation for a given amount.
The point to be emphasized is that "[s]uch a decision properly requires consideration of available factual information, an understanding of the applicable law, and knowledge of jury verdicts in the forum in which the action is to be tried." Ibid. These are the tools customarily used by a litigator in assessing any given case. Ibid. Plaintiffs failed to produce this information except in the most general, abstract sense. Their documentary submissions contained nothing but guesswork and unsupported anecdotal references, and were wholly insufficient to satisfy their burden under Griggs. Buckelew v. Grossbard, *1125 87 N.J. 512, 524, 435 A.2d 1150 (1981); Kaplan v. Skoloff & Wolfe, P.C., 339 N.J.Super. 97, 102-03, 770 A.2d 1258 (App.Div.2001); Taylor v. DeLosso, 319 N.J.Super. 174, 180-84, 725 A.2d 51 (App.Div.1999); Jimenez v. GNOC Corp., 286 N.J.Super. 533, 540, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996).

III.
We next address the coverage issue presented. We agree with the Law Division that Penn Millers' declination letter to Rosemount did not identify as a basis for denying coverage plaintiffs' failure to allege physical manifestation of "bodily injury." Nor did Penn Millers' oblique and cryptic reference to "any good and valid reason that may come to light" preserve that ground as a basis for disclaiming liability. Although Penn Millers cited the claimant's failure to allege bodily injury as a basis for declining coverage in an unrelated case, we are satisfied that this reference did not put Rosemount on notice, either actual or constructive, of its intent to rely upon the same ground in this litigation. Reading these letters with maximum indulgence and liberality, they did not adequately inform Rosemount of the reason for the declination of coverage advanced after entry of the settlement agreement.
The record supports the conclusion that Rosemount detrimentally relied on Penn Millers' declination letter in entering into the settlement with plaintiffs. More specifically, Rosemount's assignment of its rights against Penn Millers to plaintiffs and plaintiffs' acceptance of that assignment could reasonably have been based on their belief that the reasons given by the insurer for declining coverage were without merit and would ultimately be rejected in the ensuing litigation. We are satisfied that reasonable, detrimental reliance by the insured serves to estop Penn Millers from changing its position concerning the basis for its denial of coverage. See Doto v. Russo, 140 N.J. 544, 659 A.2d 1371 (1995); Morton Int'l, Inc. v. General Accident Ins. Co. of Am., 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, Insurance Co. of N. Am. v. Morton Int'l, Inc., 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Mariani v. Bender, 85 N.J.Super. 490, 205A.2d 323 (App.Div.1964); Capece v. Allstate Ins. Co., 86 N.J.Super. 462, 207 A.2d 207 (Law Div.1965). Such reasonable, detrimental reliance exempts this case from the general rule adopted in Goldberg v. Commercial Union Ins. Co., 78 N.J.Super. 183, 188 A.2d 188 (App.Div.1963) that "a loss which is not within the coverage of a policy cannot be brought within such coverage by invoking the principles of waiver or estoppel." Id. at 191, 188 A.2d 188; see Green berg & Covitz v. National Union Fire Ins. Co. of Pittsburgh, Pa., 312 N.J.Super. 251, 264-65, 711 A.2d 909 (App.Div.), cert. denied, 157 N.J. 577, 725 A.2d 688, certif. denied, 157 N.J. 578, 725 A.2d 688 (1998), certif. granted, 161 N.J. 143, 735 A.2d 569 (1999).
Because of our disposition of the estoppel question, we need not decide whether a claim for mishandling a corpse, which does not require a showing of physical injury, see Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. at 538, 538 A.2d 346; Muniz v. United Hosps. Med. Ctr. Presby. Hosp., 153 N.J.Super. at 81, 379 A.2d 57, fell beyond the coverage of the insuring agreement, see Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992); SL Indus. v. American Motorists Ins. Co., 128 N.J. 188, 607 A.2d 1266 (1992).
We reject plaintiffs' claim that they were entitled to prejudgment interest. The judge found that the settlement was a sham and that plaintiffs' insistence on litigating the point delayed resolution of other *1126 issues. The judge also concluded that the coverage issues were genuine and highly debatable. We perceive no basis to disturb the judge's denial of interest.
Affirmed.
NOTES
[1] Judge Fall did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.