928 A.2d 25 (2007)
394 N.J. Super. 557
NEW JERSEY EYE CENTER, P.A., Plaintiff-Respondent,
v.
PRINCETON INSURANCE COMPANY, Defendant-Appellant, and
Debra Cucopolous, Greg Cucopolous, Donna DeAngelis, James DeAngelis, James Dell'Ermo, Lisa Dell'Ermo, Daniel J. DeSilvestro, Patricia Dodge, Thomas Donnelly, Patricia Kushner, Steven Kushner, Tony Del Presto, Richard Peirano, Joseph Branciforte, Catherine Branciforte, Gloria Sewall, Yuri Mykolayevych, Benjamin Giardina and Joanne Giardina, Additional Parties In Interest-Respondents, and
Emretta Hinman, William Hinman, Jim McLoughlin, Cynthia McLoughlin, Paul P. Pairo, Rosemary Lesky, Barbara Vey and James H. Vey, Additional Parties In Interest.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2007.
Decided July 13, 2007.
*26 Mark A. Aronchick, Philadelphia, PA, admitted pro hac vice, and William S. Wachenfeld argued the cause for appellant (Hangley Aronchick Segal & Pudlin and Mendes & Mount, attorneys; Mr. Aronchick, Michael Lieberman, and Mr. Wachenfeld, on the brief).
Bruce H. Nagel, Roseland, argued the cause for respondents Debra Cucopolous, Greg Cucopolous and Patricia Dodge (Nagel, Rice, attorneys; David A. Mazie, Adam M. Slater and Mr. Nagel, of counsel and on the brief).
David A. Mazie and Adam M. Slater argued the cause for respondents Donna DeAngelis, James DeAngelis, James Dell'Ermo, Lisa Dell'Ermo, Daniel J. DeSilvestro, Thomas Donnelly, Patricia Kushner and Steven Kushner (Mazie Slater Katz & Freeman, attorneys; Mr. Mazie, Mr. Slater and Bruce H. Nagel, of counsel and on the brief).
Abbott S. Brown argued the cause for respondents Joseph Branciforte, Catherine Branciforte, Benjamin Giardina, Joanne Giardina and Gloria Sewall (Bendit Weinstock, attorneys; Mr. Brown, William L. Gold and Sherri Davis Fowler, on the brief).
Alexander G. Benisatto, Hackensack, appeared for respondent Yuri Mykolayevych *27 (Shapiro & Croland, attorneys; Mr. Benisatto, on the brief).
Elizabeth Eilender, Hackensack, appeared for respondent Tony Del Presto (Winne, Banta, Hetherington, Basralian & Kahn, attorneys; Ms. Eilender, on the brief).
Peter J. Eliopoulos appeared for respondent Richard Peirano.
Kern, Augustine, Conroy & Schoppmann, attorneys for respondent New Jersey Eye Center, did not file a brief.
Before Judges WEFING, C.S. FISHER and MESSANO.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Princeton Insurance Co. ("Princeton") appeals from an order for judgment entered by the trial court in a declaratory judgment action. After reviewing the record in light of the contentions advanced on appeal, we reverse.
That declaratory judgment action was filed in connection with a coverage dispute relating to a series of medical malpractice actions pending against Joseph Dello Russo, M.D., a physician licensed to practice medicine in New Jersey who specializes in ophthalmology. Dr. Dello Russo was insured under a professional liability policy issued by Interstate Insurance Co. with a coverage limit of three million dollars. Dr. Dello Russo was also the principal of New Jersey Eye Center, P.A. ("Eye Center"), which was insured under a policy issued by Princeton. The Princeton policy provided coverage of six million dollars per incident, with an aggregate coverage of eight million dollars. The Princeton policy contained the following endorsement:
Your employees, students, authorized volunteer workers, members of the Board of Trustees and executive officers are insureds while acting within the scope of their duties. We won't cover physicians and surgeons, physician assistants, surgical assistants, dentists, residents in postgraduate year 2 or higher, nurse anesthetists, perfusionists, nurse midwives, nurse practitioners, clinical nurse specialists, nurse surgical assistants, podiatrists, chiropractors or psychologists, unless otherwise scheduled.
Dr. Dello Russo developed an extensive practice performing lasik surgery.[1] In this procedure, the surgeon, using an excimer laser, lifts up the top layer of a patient's cornea, makes a flap and then reshapes the cornea underneath. The aim of the procedure is to provide better visual acuity for the patient, in many cases making the use of glasses or contact lenses unnecessary. In his deposition, Dr. Dello Russo testified that in the period 1999-2000 he charged approximately fifteen hundred dollars per eye and was seeing approximately one hundred patients a week.
Eventually, Dr. Dello Russo became the subject of a number of medical malpractice actions brought by patients who alleged that he and Eye Center personnel had been negligent in the performance of this surgery. The appeal before us implicates thirteen of these suits. Princeton, relying on the language we set forth earlier, declined coverage in these malpractice actions to individual physician defendants although it did agree to provide a defense to the Eye Center in each of these actions under a reservation of rights.
There is no doubt that the progress of these malpractice suits was acrimonious, *28 hindering both attempts to resolve the matters and to conclude the discovery necessary to make them ready for trial. At one point, Dr. Dello Russo sued one of the plaintiffs' attorneys for that attorney's conduct with respect to this litigation. Dello Russo v. Nagel, 358 N.J.Super. 254, 817 A.2d 426 (App.Div.2003). Indeed, we are informed that at another point certain participants in a deposition session had to be physically restrained from attacking each other. Later, during the trial that led to the judgment on appeal, the attorney representing Dr. Dello Russo's personal interests refused to participate in any proceedings at which a particular plaintiff's counsel was present.
With trial dates looming on the horizon for a number of these cases, the trial court, at the request of counsel, held a series of conferences in an attempt to resolve all these matters. Those attempts, however, were unsuccessful, and in January 2004, Eye Center filed a declaratory judgment action against Princeton, seeking a judgment that Princeton was obligated to defend and indemnify it in these malpractice actions for the actions of its physicians, surgeons and technicians. Eye Center named as "parties in interest" to this declaratory judgment action the attorneys representing the various plaintiffs who had asserted claims against Dr. Dello Russo.
The coverage issue in the declaratory judgment action was presented to the trial court by way of motions for summary judgment returnable before a trial judge other than the judge who had been involved in attempting to resolve the cases. Faced with the prospect of a judicial ruling on the coverage issue, and uncertain as to what the ruling would be, the attorneys involved in the malpractice litigation accelerated settlement discussions.
From the record before us, we can conclude that extensive settlement discussions took place during most of the day on March 11, 2004, the day before the summary judgment motions were returnable. During the course of these discussions, the trial judge who had initially been involved in attempting to resolve the lawsuits provided assistance, but at some point during the afternoon, it appeared that the discussions had come to a dead end and would not be revived, certainly not in the immediate future. At that point, the attorney representing Princeton left the courthouse.
After his departure, however, settlement discussions resumed. The participants included the attorneys representing the various plaintiffs, the attorney that Dr. Dello Russo had retained to represent his personal interests in the course of these various proceedings and the attorney from Interstate. Eventually, these attorneys came to an understanding, which they placed upon the record. Although the transcript contained in the record before us does not indicate the time that these proceedings commenced, it is evident from the remarks made at various points that it was well after the normal close of court business. It is also evident that there was no attorney for Princeton present during any part of these proceedings.
The attorneys who participated in these discussions agreed to the following terms:
 Plaintiffs would dismiss their individual actions and file one new action in which all would join and to which no statute of limitations defense would be asserted. The advantage to this from Dr. Dello Russo's perspective was that he would only have to report the settlement of one malpractice claim, as opposed to multiple claims.
 Eye Center, Dr. Dello Russo, William Kellogg M.D. and Steven Meneve (the latter two were employees of Eye Center who had been named as defendants in the various suits) would, pursuant to *29 Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982), assign to plaintiffs all of their rights under Princeton's policy insuring Eye Center.
 Plaintiffs agreed they would seek recovery only from Interstate and Princeton. All plaintiffs, with the exception of Giardina, agreed they would not seek recovery from the personal assets of Drs. Dello Russo or Kellogg or Steven Meneve and would fully release them, and Eye Center and its employees and agents, from all liability.[2]
 In return, Eye Center, and Drs. Dello Russo, and Kellogg agreed to waive their rights to contest liability and proximate causation with respect to each of the plaintiffs' various claims.
 Further, they agreed to participate in binding, non-appealable arbitration before a retired Superior Court Judge which would address only the issue of damages and at which the only witnesses would be the individual plaintiffs.
The attorneys reconvened the following morning, prior to argument on the summary judgment coverage motions. The attorney for Princeton was present and placed on the record his objections to this settlement and his position that it was in no way binding upon Princeton. He maintained that by entering this settlement, Eye Center, through Dr. Dello Russo, had breached the duty of loyalty and cooperation owed to Princeton. The trial judge who had presided over the settlement discussions rejected Princeton's objections, however.
Later that morning, the summary judgment motions in the declaratory judgment action were argued, and several days later, on March 16, the judge hearing that aspect issued a written opinion setting forth his findings and conclusions as to why Princeton was obligated both to defend and indemnify Eye Center for the vicarious liability of its physicians, surgeons and technicians. That ruling is not challenged before us on appeal.
The judge involved in the settlement discussions later entered an order confirming the settlements. That judge attached to the order a rider containing the following provision.
The arbitration will address the issue of damages. Subject to the discretion of the arbitrator, the issue of liability and proximate causation will be addressed only at the election of the plaintiff, and if raised will be uncontested. The plaintiff in each matter may produce expert opinion in writing only, on any and all issues, and the defendant may produce expert opinion in writing only, on the issue of damages only.
Prior to the arbitrations that were called for under the settlement agreement, plaintiffs dismissed their claims against the other individual defendants and proceeded solely against Eye Center and Dr. Dello Russo. At the start of the arbitration proceedings, a question arose as to whether the proceedings would be transcribed; when the attorneys representing the various plaintiffs objected, the arbitrator ruled that none of the proceedings were to be transcribed. Princeton, because of its position that the purported settlement was ineffective and not binding upon it, did not participate in the arbitrations. Dr. Dello Russo's personal attorney did participate and, we are informed, did cross-examine the plaintiffs with respect to their various *30 injuries. There was, however, in accordance with the terms of the settlement agreement, no contest before the arbitrator on the question of either liability or proximate cause as to any of the plaintiffs.
Thereafter, the arbitrator issued individual awards that ranged in amount from one hundred seventy thousand dollars to three million dollars. Following those awards, there were seven days of hearings in the Superior Court, Law Division, before another trial judge on the question of whether the process employed pursuant to the settlement was the product of collusion and whether the amounts awarded by the arbitrator were fair and reasonable. The witnesses included the attorneys who represented the various plaintiffs and the attorney who represented Dr. Dello Russo. Princeton presented the testimony of William Davis, who was senior vice president for claims for Medical Inter-Insurance Exchange (MIIX); Princeton proffered Davis as an expert in the valuation of medical malpractice claims, but his testimony was received only pursuant to R. 1:7-3.
At the conclusion of those proceedings, that judge placed an oral decision on the record, finding no collusion or bad faith and that the awards themselves were fair and reasonable. He found that the settlement represented "a reasonable business decision" and utilized "a fair process for determining the amount of money each claimant would be entitled to receive." An order for judgment was then entered, entering judgment in favor of the respective plaintiffs and against Princeton for the amounts awarded in arbitration, less a pro rata adjustment for the payments made by Interstate. Princeton now appeals from that judgment.
On appeal, Princeton argues, in essence, that the procedure adopted did not comply with the policies expressed in Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982), and Pasha v. Rosemount Memorial Park, Inc., 344 N.J.Super. 350, 781 A.2d 1119 (App.Div.2001), certif. denied, 171 N.J. 42, 791 A.2d 221 (2002). Respondents, on the other hand, argue that Princeton, having abandoned its insured, should not be heard to complain when the parties thereafter adopt a procedure designed to produce a result that is reasonable to all the parties. Respondents point to Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 267 A.2d 7 (1970). The trial judge who presided over the hearings that led to the judgment on appeal agreed with that position. Having reviewed this record carefully, we are unable to agree, however, with the underlying premise that Princeton had abandoned its insured.
Griggs v. Bertram, supra, is the seminal case on the responsibility an insured owes to his insurer when he enters into a settlement after his insurer has improperly denied him coverage and a defense. The Court held that such a settlement "may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith." Griggs v. Bertram, supra, 88 N.J. at 368, 443 A.2d 163. In that case, Bertram, who was insured under a homeowners policy issued by Franklin Mutual Insurance Company, became involved in an altercation with Griggs following a basketball game at a local school. Id. at 353, 443 A.2d 163. Following the fight, Bertram notified Franklin of the incident; it sent an investigator to interview him and in the course of the interview, he admitted punching Griggs. Ibid. After some period of time elapsed, Griggs filed suit and Bertram forwarded the papers to Franklin. Id. at 353-54, 443 A.2d 163. It was only at that point that Franklin, relying on the intentional acts exclusion of the policy, declined coverage. Id. at 354, 443 A.2d 163. Bertram then retained his own counsel to *31 defend him. Ibid. Prior to trial, the parties negotiated a settlement under which a judgment for nine thousand dollars was entered against Bertram, but Griggs agreed to not enforce the judgment against him; rather, Bertram assigned to Griggs his rights to pursue Franklin. Ibid. The Court concluded that Franklin's delay in notifying Bertram that it was declining coverage estopped it from thereafter disclaiming its responsibility. Id. at 363-64, 443 A.2d 163.
The Court went on to consider the implications of Bertram having negotiated a settlement with Griggs without the participation or blessing of Franklin, specifically, whether Franklin could be held responsible to pay the judgment entered under that settlement. Id. at 364, 443 A.2d 163. The Court held that "a settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith." Id. at 368, 443 A.2d 163. There are two prongs to the test for enforceability of such a settlement, and both must be established. Fireman's Fund Ins. Co. v. Imbesi, 361 N.J.Super. 539, 564-65, 826 A.2d 735 (App.Div.), certif. denied, 178 N.J. 33, 834 A.2d 406 (2003). A failure to establish either will relieve the insurer of responsibility. "The insurer is not liable if the settlement is either unreasonable, or was reached in bad faith." Id. at 565, 826 A.2d 735. "The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer." Griggs v. Bertram, supra, 88 N.J. at 368, 443 A.2d 163.
The Court specifically noted that it was the insurer's burden to demonstrate "by a preponderance of the evidence, that it is not liable because the settlement is neither reasonable nor reached in good faith." Ibid. The Court remanded the matter to the trial court in light of the principles it had enunciated. Id. at 369, 443 A.2d 163.
Pasha v. Rosemount Memorial Park, supra, 344 N.J.Super. at 352, 781 A.2d 1119, provides an example of a settlement between a claimant and an insured that was set aside as not binding upon the insurance carrier. Plaintiffs in Pasha sought damages following an incident in which their mother's casket, while being lowered into the grave, sank in approximately three feet of water. Id. at 353, 781 A.2d 1119. After suit was filed, the insurance company declined coverage. Ibid. Thereafter, plaintiffs and the cemetery entered into a settlement agreement, purportedly for five hundred thousand dollars. Ibid. As part of the settlement, they entered a confidential agreement under which the cemetery would pay plaintiffs thirty thousand dollars and assign its rights against its carrier to plaintiffs. Ibid. Plaintiffs agreed to reimburse the cemetery one-third of their recovery from the insurance company, or thirty thousand dollars whichever was less. Ibid. We concluded that this settlement was not binding upon the insured because "[t]he circumstances surrounding the agreement demonstrated collusion and bad faith." Id. at 355, 781 A.2d 1119.
We went on, however, to hold that the insurer's disclaimer, and its refusal to provide a defense to its insured, was invalid. Id. at 359, 781 A.2d 1119. Accordingly, we held that it was liable for the thirty thousand dollars its insured had paid the plaintiffs. Ibid.
We are not persuaded by the attempt of the malpractice plaintiffs to distinguish Pasha from the present situation on the basis that the amounts these claimants were to receive were set by an arbitrator and not reached by the parties to the settlement. In Pasha, the insurance company *32 declined coverage entirely, as opposed to the case before us, in which Princeton provided a defense to its insured, Eye Center, albeit under a reservation of rights. See Hamilton v. Maryland Casualty Co., 27 Cal.4th 718, 117 Cal. Rptr.2d 318, 41 P.3d 128, 133 (2002) (criticizing "settlements reached without the consent or participation of the defending insurer, and incorporating a covenant not to execute or similar device"); Justin A. Harris, Note, Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation, 47 Drake L.Rev. 853, 855, 874 (1999) (stating "where the provider has agreed to defend the insured, assignments of claims, following a stipulated judgment and a covenant not to execute, are fraught with an unjustified risk of fraud and collusion. . . . An adequate balance may be drawn under an approach that permits insureds to settle with a plaintiff and assign his claims against his provider to the plaintiff, in exchange for a covenant not to execute, only when the insured is truly abandoned by the provider.").
Until the events late in the day and into the evening of March 11, 2004, when the plaintiffs and Dr. Dello Russo's personal attorney negotiated the structure of this settlement, Princeton was defending its insured, Eye Center, in each of the pending malpractice suits. The fact that it was proceeding under a reservation of rights in presenting that defense can in no way be deemed an abandonment of its insured.
Respondents have asserted that Princeton, having taken the position that it was defending these various malpractice actions under a reservation of rights, was obligated to commence a declaratory judgment suit to resolve the coverage issue and that its failure to do so constituted an abandonment. They have presented us with no authority to support such a proposition which, in our judgment, runs contrary to the views expressed by the Supreme Court in Burd v. Sussex Mutual Insurance Co., supra, 56 N.J. at 391, 267 A.2d 7.
In Burd, the plaintiff Burd was convicted of atrocious assault and battery after shooting August D'Agostino with a shotgun. Id. at 386, 267 A.2d 7. When D'Agostino later sued for his injuries, Burd sought coverage under his homeowner's insurance, but the carrier declined coverage, citing the exclusion for intentional acts. Id. at 386-87, 267 A.2d 7. Burd hired his own attorney to defend against D'Agostino and, after a verdict of eight thousand five hundred dollars was returned, he sued the carrier to recover that judgment and his counsel fees. Ibid. The Supreme Court reversed a summary judgment holding the carrier responsible, finding that even in the face of the carrier's refusal to defend its insured, it was entitled to challenge the issue of coverage within the context of a declaratory judgment action. Id. at 391, 267 A.2d 7.
Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.
[Ibid.]
The Court clearly stated, "We think the better course is to leave it to the contenders to decide for themselves if and when to *33 sue." Id. at 392, 267 A.2d 7. We can perceive no reason in policy or logic to retreat from that principle in this case.
The terms of the settlement reached on March 11 may, in the words of the trial judge, have been "a reasonable business decision" from Dr. Dello Russo's perspective, since it assured his personal assets would not be called upon to satisfy any of the malpractice claims against him, but they were in complete derogation of Dr. Dello Russo's obligations as the principal of Eye Center under its policy with Princeton. Section VI A of that policy sets forth the obligations of the insured, which include the duty to "[c]ooperate . . . in the investigation, settlement, or defense of the claim or suit" and the duty not to "assume any obligation . . . without [Princeton's] consent." It was only when the parties negotiated this settlement without the participation or consent of Princeton that Princeton disclaimed coverage under the policy.
Obviously the insured must avoid independent action which will contravene any of the essential terms of the policy; compliance with such provisions is a condition precedent to recovery under the policy and their breach can cause a forfeiture of coverage. Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 375, 199 A. 606 (E. & A.1938) (breach of the covenants to cooperate and not to "voluntarily assume any liability . . . or interfere in any negotiations for settlement or legal proceedings" operates "as an avoidance of the insurer's contractual liability.") In this setting, an insured cannot take any meaningful steps toward an early settlement of the claim without risking loss of coverage pursuant to the provision prohibiting it from voluntarily compromising liability or independently settling the claim.
[Griggs v. Bertram, supra, 88 N.J. at 360, 443 A.2d 163.]
Based upon this analysis, we do not find it necessary to even consider whether the findings of the judge below, that the procedure adopted was not the product of bad faith or collusion and the damages were reasonable in amount, are supported by the record. In our judgment, that is simply immaterial because the purported settlement represented such a fundamental breach of the insured's obligations to Princeton.
Our conclusion also makes it unnecessary to address Princeton's contention that the judgment should be reversed because the trial judge incorrectly imposed upon it the burden to demonstrate by clear and convincing evidence that the settlement was not binding on it, Griggs v. Bertram, supra, 88 N.J. at 368, 443 A.2d 163, as well as its assertion that the judge should have made his own individual findings as to a reasonable damage award.
The judgment under review is reversed, and the matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.
NOTES
[1] Lasik is an acronym for laser assisted keratomileusis in situ.
[2] The Giardinas insisted on this exception because they had, in addition to suing for malpractice, asserted a product liability claim against the manufacturer of the machine used during surgery.